No. 118,406[1]

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DENISE DEAN,
*Appellant*,

and

CHAD DEAN,
*Appellee*.

SYLLABUS BY THE COURT

1.

The effect of not providing a transcript on appeal is not necessarily preclusive. Instead, when a party provides no transcript, the appellate court presumes the district court's factual findings were correct.

2.

An appellate court reviews a district court's interpretation and application of the Kansas Child Support Guidelines de novo.

3.

The Kansas Child Support Guidelines' definition of income is intentionally broad and includes every conceivable form of income whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, or rent.

---

[1] **REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish by an order dated December 28, 2018, under Rule 7.04 (2019 Kan. S. Ct. R. 45). The published version was filed with the Clerk of the Appellate Courts on February 13, 2019.

1

4.

A district court does not have discretion to choose a method of determining income that varies from the Kansas Child Support Guidelines' definition of gross income.

5.

The Kansas Child Support Guidelines do not grant a district court the discretion to exclude non-liquid capital gains from rental income received by self-employed persons. Under the circumstances of this case, the district court erred in determining that rental income received was not to be counted as income because the recipient had used it to pay down the principal on loans.

6.

The Kansas Child Support Guidelines do not consider the subsequent availability or liquidity of income. Thus, the fact that a party chooses to use income to pay for an asset does not change the character of the money from income to non-income for purposes of calculating child support under the Guidelines.

7.

A motion for attorney fees must be filed in a non-argued case within 14 days of the date of the letter assigning the case to a non-argument calendar.

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed August 17, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Stephen M. Turley*, of Wagle & Turley, LLC, of Wichita, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

2

GARDNER, J:  Chad and Denise Dean married in 2002 and had two children. They divorced in 2016 and the district court ordered Chad to pay child support. Denise timely appeals, arguing that the district court erred in not following the definition of income in the Kansas Child Support Guidelines (Guidelines). Agreeing with Denise, we vacate the child support order and remand with instructions.

*Factual and procedural background*

During their marriage, the parties acquired over 50 rental properties and amassed a joint estate with a net value of more than $1,000,000. Both were self-employed. Denise worked as a real estate agent. Chad was the sole owner of three real estate management companies that generated income from purchasing, managing, leasing, and selling real estate. Chad also held a majority ownership interest in a roofing company.

The evidentiary hearing for the divorce proceedings lasted 10 days. During that time, the district court heard from different experts about how to calculate Chad's income for child support purposes. It found that Denise's expert, Dr. Jeff Quirin, provided the most reliable indication of Chad's income. The parties do not challenge that decision.

Both Quirin and the district court conceded the difficulty of accurately calculating Chad's income. That difficulty was caused in part by the parties' failures to file true, complete, and accurate Domestic Relations Affidavits, tax returns, and profit and loss statements. Quirin examined profit and loss statements and income tax filings to calculate Chad's income.

Denise challenges only the method that the district court used to determine Chad's income. Quirin offered two different methods of determining Chad's income:  the net income method and the cash flow method. The net income method deducts depreciation and interest payments but does not deduct amounts paid to reduce the principal owed on

3

mortgages. Under that method, Chad's income from his four businesses was $336,672. In contrast, the cash flow method does not deduct depreciation but does deduct payments of principal on the mortgages. Under that method, Chad's income was $233,863, and, after removing earnings from Denise's real estate sales, was $152,024. The district court used the cash flow method. Denise contends it should have used the net income method instead.

Using the cash flow method, the district court excluded "non-liquid capital gains" from both parties' income. It defined these gains as "the principal reductions that occur by virtue of monthly, quarterly, or otherwise regular payments of the mortgages . . . [that] increase[] a party's net worth." The district court granted Chad most of the couple's properties, transferred 16 properties to Denise, and reasoned that because each party owned some properties, each could benefit from such capital gains.

The district court reasoned that use of the cash flow method would create fewer opportunities for continued litigation. It highlighted the contentious nature of the case—the record reflects 135 hearings and 600 entries in the first 3 years. It explained that including the principal reduction payments in income would require tedious calculations that would provide fodder for further arguments about the amounts.

Denise appeals but has not included in the record on appeal any transcript from the 10-day trial. Chad contends that this precludes her from prevailing on appeal. But the effect of not providing a transcript is not necessarily preclusive. Instead, when a party provides no transcript, we presume the district court's factual findings were correct. *King v. Stephens*, 113 Kan. 558, 560, 215 P.311 (1923). Because Denise has provided no transcript or adequate substitute, we will not review any action of the trial court requiring us to examine the evidence. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 603, 647 P.2d 1268 (1982) (citing *Osborne v. Fakes*, 178 Kan. 373, 376, 286 P.2d 156 [1955]).

Denise does not dispute the district court's factual findings but challenges its method of deriving a gross income figure for Chad. She styles the sole issue on appeal as one of law: Did the district court properly exclude "non-liquid capital gains" from Chad's income for purposes of calculating his child support payment. We restrict our review to that question.

*Standard of review*

We review a district court's interpretation and application of the Guidelines de novo. *In re Marriage of Branch*, 37 Kan. App. 2d 334, 336, 152 P.3d 1265 (2007). Because this appeal turns on interpreting "gross income" under the Guidelines, we apply de novo review.

*Analysis*

Kansas relies on gross income, not net income, in calculating child support. Gross income for self-employed parents is defined as "income from self-employment and all other income including that which is regularly and periodically received from any source." Kansas Child Support Guidelines §§ II.E.1., II.E.3. (2018 Kan. S. Ct. R. 82). The Child Support Worksheet (Worksheet) (2018 Kan. S. Ct. R. 112) guides the calculation of the child support obligation. Self-employment gross income is recorded on Line B.1. and is then reduced by the "reasonable business expenses" recorded on Line B.2. to yield the "domestic gross income." This method is much like the net income method described by the expert and rejected by the district court.

The Worksheet then lists adjustments to the domestic gross income in Section C to yield the "child support income" amount recorded on Line C.5. The "basic parental child support obligation" is based on that income and is recorded on Line D.9. A rebuttable

5

presumption arises that the amount on Line D.9. is a reasonable amount of child support. Kansas Child Support Guidelines § I. (2018 Kan. S. Ct. R. 79).

A court may deviate from the Line D.9. child support amount if it finds, from relevant evidence, that a deviation would serve the best interests of the child, but it must make written findings explaining the deviation. Kansas Child Support Guidelines § I. (2018 Kan. S. Ct. R. 79). "Any deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry." *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998). Failure to follow the Guidelines is reversible error. 265 Kan. at 716.

The district court here did not deviate from the Line D.9. amount, but it deviated from the beginning amount of gross income on Line B.1. Common sense and logic dictate that "use of the guidelines" includes use of the Guidelines' definition of income. The Guidelines' definition of income is "intentionally broad to include every conceivable form of income whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent or whatever." 2 Elrod, Kansas Law and Practice:  Kansas Family Law § 14:10, p. 694 (2017-18 ed.). The district court's decision to exclude some of Chad's rental income from the gross income figure on Line B.1. does not facially comply with the Guidelines.

The district court acknowledged that "the Child Support Guidelines provide that the calculation of income is to include income from all sources." But it found the Guidelines required it to consider all relevant evidence presented and that the Line D.9. figure was a rebuttable presumption of a reasonable child support order. The court explained in detail why it decided to exclude non-liquid capital gains from Chad's income:

"[T]he non-liquid capital gains are not being included as income in the calculation of child support for this case for the following reasons: '[1] both parties have the potential to benefit from such gains on the properties they each own; [2] that determining these non-liquid capital gains would require tedious calculations throughout the remainder of the children's lives during minority; [3] that these parties' case history indicates that if these gains were included in the calculation of each party's income for child support purposes, these parties would be arguing incessantly from year-to-year about the accurate calculation of those gains; [4] because the Court has evidence of other income of the parties that would sufficiently provide for the calculation of child support of the children; [5] the Court is seeking to limit or reduce the waste of the parties assets through unending litigation expenses to dispute what those non-liquid capital gains are.' And this Court finds that such waste of the parties' assets and parental energy and the continuing conflict between the parents is not in the children's best interests."

Chad argues that these detailed findings justify the district court's deviation from the Guidelines' definition of gross income, citing *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 608, 351 P.3d 1287 (2015). We disagree. In that case, the district court used true gross income and followed the Worksheet through Line C.5. to calculate "child support income" but then applied a formula other than the equal parenting time formula. We found that the court's written findings justified its choice of a formula other than the equal parenting time formula, but only because the relevant Guideline explicitly granted it discretion. As Guidelines § III.B.7.b. (2013 Kan. Ct. R. Annot. 131) provided: "'The Equal Parenting Time Formula is discretionary with the court and may be used to set child support when the district court makes the required affirmative findings.'" 51 Kan. App. 2d at 611.

Similarly, the Guidelines grant the district court discretion to determine whether to include depreciation as income. *In re Marriage of Wiese*, 41 Kan. App. 2d 553, 554, 203 P.3d 59 (2009). The Guidelines expressly recognize that depreciation should not categorically be deducted as a business expense or treated as income; rather, its inclusion, if any, should depend on the particular circumstances of each case. Kansas Child Support

Guidelines § II.E.2. (2018 Kan. S. Ct. R. 82). A court may include depreciation as a business expense only if it is reasonably necessary to produce income. A district court has discretion to choose which accounting method to use for depreciation because the Guidelines grant it discretion to determine whether to *include* depreciation. *In re Marriage of Wiese*, 41 Kan. App. 2d at 554 (finding no abuse of discretion by a district court's use of straight-line depreciation instead of accelerated depreciation to calculate child support income).

*Skoczek* and *Wiese* do not suggest that making written findings empowers a district court to substitute its own definition for a Guidelines' line item. See *In re Marriage of Leoni*, 39 Kan. App. 2d 312, 317, 180 P.3d 1060 (2007) (affirming award because it followed sound accounting practices and was legal and lawful under the Guidelines). The district court did not have discretion to choose an accounting method that varied from the Guidelines' definition of gross income.

We have also recognized that the district court has discretion to include or exclude an individual's share of a Subchapter S corporation's income as income for purposes of calculating child support. This is because determining an individual's share of a Subchapter S corporation's income received for purposes of calculating child support is highly fact specific. *In re Marriage of Brand*, 273 Kan. 346, 356, 44 P.3d 321 (2002).

> "Even in those states with particularized formulas for determining the income available to self-employed payors, the calculation of income is highly fact specific. *Glass v. Oeder,* 716 N.E.2d 413, 416-17 (Ind. 1999).
>
> There is no presumption that an individual's share of a Subchapter S corporation's income should be included as income for purposes of calculating child support. Individual inquiry on a case-by-case basis is necessary to ensure that the appropriate amount of income is considered 'received' when determining 'Domestic Gross Income' for the self-employed." *Brand*, 273 Kan. at 356.

8

But here, the parties do not dispute whether Chad *received* the income from his rental properties. The sole issue is whether the district court erred in deducting certain amounts from that income.

*Brand* considered the same underlying policy concern that Denise raises here—that excluding an increase in equity from income permits the payor to build up equity at the expense of the child because the payor can defer income until the child reaches the age of majority. 273 Kan. at 356-57. Because of that potential for abuse, courts avoid a blanket rule and handle the matter case-by-case. In *Brand*, the Supreme Court upheld the district court's decision not to include the distributions from a Subchapter S corporation in the father's income for child support purposes because the mother had not shown that the father, as a minority shareholder, had "manipulated corporate assets, decreased the amount of his salary to increase retained earnings, or acted in any way to shield income." 273 Kan. at 355. Similarly, in *In re Marriage of Unruh*, 32 Kan. App. 2d 770, 774-75, 88 P.3d 1241 (2004), we found nothing to show that the father was somehow manipulating the Subchapter S corporation for his own benefit and to the detriment of his minor children. We affirmed the district court's decision not to count 100% of the earnings or distributions attributable to the father as self-employment domestic income.

But this is not a Subchapter S case. It may well be that the district courts should have discretion to determine from the facts of each case whether non-liquid capital gains should be excluded from rental income received by self-employed persons. But the Guidelines do not grant a court discretion to do so.

Our conclusion is consistent with our decision in *In re Marriage of Matthews*, 40 Kan. App. 2d 422, 193 P.3d 466 (2008). There, we held that what a parent chooses to do with his or her income after receiving it is not relevant to calculating the amount of income for child support purposes. The father in *Matthews* had received income as dividends. After divorce proceedings began, he pledged 80% of those dividends to

9

purchase shares according to a stock-purchase agreement. We found that the dividends distributed to the father fit within the definition of income for purposes of child support. We reasoned that the Guidelines did not consider the "subsequent availability" of the income. "Thus, the fact that [Father] chose to use his income to pay for an asset he purchased does not change the character of the money from 'income' to 'non-income' for purposes of calculating child support under the Guidelines." 40 Kan. App. 2d at 429. That rule applies here as well.

We illustrated that holding in *Matthews* with an analogy remarkably similar to the facts here:

> "[W]e would reject an argument that rental income received by [Father] was not income . . . simply because [Father] was utilizing the rental income received from his tenant to pay back the bank loan. This is because the bank loan, as it is paid back over years, increases [Father's] net worth in the rental home. By the time his children are at the age of majority, [Father] would be the owner of valuable real estate debt free and at the direct expense of his children." 40 Kan. App. 2d at 430.

Here, in contradiction to the example in *Matthews*, the district court determined that rental income Chad had received was not to be counted as income because he used it to pay down the principal on his loans.

Chad concedes that "*Matthews* stands for the proposition that income pledged to a debt should still be counted as income for the purpose of child support calculation." But he contends *Matthews* does not apply solely because that case, unlike this one, involved only one self-employed parent. Nothing in *Matthews* suggests that this distinction makes any difference, however. We reject Chad's argument because our interpretation of "gross income" does not depend on the facts of the case. Indeed, the policy concern noted in *Brand* and *Matthews* is implicated more when both parents are self-employed, because both could reduce their incomes to undercut the amount of child support owed.

10

The underlying policy concern of shielding income is evident here. The expert noted that Chad made "enormous pay downs of principal on mortgages" totaling about $210,000 in the 12-month period right after Denise filed for divorce. Those pay downs resulted in "incredibly rapid equity build-up." The expert also testified that Chad's 2014 income tax return showing a deduction of $211,000 for depreciation of real estate was unrealistic because real estate does not typically decrease in value. Taken together, these facts raise a concern that Chad may have been seeking to reduce his income for child support purposes while growing his net worth.

We commend the district court for its thorough decision, and we appreciate its desire to prevent ongoing battles about the amount of child support. But the district court had no authority to effect that goal by excluding the non-liquid capital gains from the rental income Chad received. As a result, we must vacate and remand for calculation of each parent's "domestic gross income" and "child support income" in accordance with the Guidelines. We urge the parents to cooperate with one another and with the court in setting a reasonable amount of child support.

*Attorney fees*

Chad seeks attorney fees under Kansas Supreme Court Rule 7.07(c) (2018 Kan. S. Ct. R. 50), arguing that this appeal is frivolous. He contends Denise's failure to order transcripts from the 10-day trial prevents us from making meaningful review.

We deny the motion because it was untimely filed. Supreme Court Rule 7.07(b) requires that motions for attorney fees be filed within 14 days of the date of the letter assigning the case to a non-argument calendar. (2018 Kan. S. Ct. R. 50.) That letter was dated March 8, 2018, but Chad's motion was not filed until April 30, 2018.

We would have denied the motion on its merits as well. We were able to review the district court's decision without having transcripts because the issue on appeal was purely a legal one. We also found that the district court committed reversible error—necessarily, then, the appeal was not frivolous. See *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 942, 381 P.3d 490 (2016).

We vacate the child support order and remand with instructions. We deny Chad's motion for attorney fees.