NOT DESIGNATED FOR PUBLICATION

No. 122,832

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MICHELLE RALPH,
*Appellee*,

and

JOHN S. RALPH,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Opinion filed
March 12, 2021. Affirmed.

*Peggy S. Bisping*, of Shawnee, for appellant.

No appearance by appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: In 2007, following a divorce, John S. Ralph was ordered to pay
child support for his three children, who were residing with his former wife, Michelle.
Ten years later, in February 2017, John filed a motion (2017 motion) to change legal and
residential custody of his two remaining minor children, J.R. and M.R., and to modify
child support due to changed circumstances. But John never filed a domestic relations
affidavit (DRA) or child support worksheet (CSW) with his motion, and he never
scheduled the motion for a hearing.

1

Two years later, in November 2019, John filed another motion (2019 motion) to modify child support. On this occasion, John sought child support from Michelle for J.R., who had been living with John, requested termination of his support obligation effective the de facto change of custody in 2017, and sought two years' credit towards his child support arrearage. Included with the motion was a DRA and CSW. The 2019 motion is the subject of this appeal.

The district court ordered Michelle to prospectively pay child support for J.R. but found it did not have jurisdiction to retroactively credit the arrearage for the two years of child support that John owed despite J.R. having resided with him.

John appeals the district court's adverse judgment. Upon our review, we find no error and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Michelle and John married in 1999 and divorced in 2007. At that time, the couple had three minor children with whom they shared joint legal custody and residency. Neither party was ordered to pay child support.

Seven years later, in November 2014, Michelle moved to modify the parenting plan and child support. In February 2016, the district court held a hearing on Michelle's motion, but John did not appear. The district court found that John had received notice of the hearing, but that he was incarcerated serving an 18-month sentence. The district court awarded Michelle sole legal and residential custody of the two remaining minor children, J.R. and M.R., and ordered John to pay Michelle child support in the amount of $1,956 per month.

2

On August 15, 2017, John filed a pro se "Omnibus Motion for Change in Legal Custody and Modification of Child Support." In the motion, John asked the district court to modify the previous 2016 order awarding Michelle sole legal and residential custody of J.R. and M.R. In the motion, John sought sole legal and residential custody of the children, asserting that Michelle had moved out of the children's school district and "[t]o uproot children from their HOME based school and friends for the last Thirteen (13) years would be an UNDUE HARDSHIP to the children."

In support of his 2017 motion, John stated that he had been released from prison, and obtained employment. He also asserted that J.R. had spent more than 70% of his time living with John, although since John's release from prison J.R. had "lived at [John's] residence full time by his choice." John concluded his 2017 motion by requesting "a MODIFICATION in child support, requiring new child support worksheets to figure proper child support amount to the proper parent." John did not seek any credit towards his child support arrearage for the months he had de facto residential custody of J.R. Of particular relevance to this appeal, John's motion did not include a DRA or CSW.

In September 2017, Michelle filed a response to John's 2017 motion, asserting that John had failed to comply with Supreme Court Rule 139 (2017 Kan. S. Ct. R. 200) and K.S.A. 23-3002 by not filing a DRA or CSW with his motion. Michelle asked the district court that in the event John complied with these filing requirements prior to the hearing on his motion, that the start date for any modification begin on the first day of the month following the filing of the DRA and CSW. Michelle also complained that John had violated the Kansas Child Support Guidelines (Guidelines) by failing to notify her of any change of financial circumstances including, but not necessarily limited to, any information regarding his new employment and income. Lastly, Michelle declined to state a position on John's motion to modify the parenting plan because he had failed to file a proposed parenting plan with his motion.

John did not schedule a hearing to address the merits of his 2017 motion, and he did not supplement his motion with a DRA or CSW after receiving Michelle's response. John's child support obligation was reduced in July 2018, after M.R. turned 18 years of age.

More than two years after John filed his 2017 motion to modify, on November 8, 2019, John filed a second motion to modify the parenting plan and child support relating to J.R. The 2019 motion included a proposed parenting plan, DRA, and CSW. In the motion, John sought an order from the district court "memorializing the de facto parenting schedule which is primary legal custody with [John] and holidays with [Michelle]." John also sought an order that would require Michelle to pay him $960 in child support per month, starting December 1, 2019. Relevant to this appeal, John also sought to "abate his child support obligation to the date that [J.R.] came to reside with him on February 1, 2017" which would result in a credit of about $33,600 against John's total child support arrearage of $81,432.

In response, Michelle asserted that John had a "significant child support arrearage in excess of $82,000" and, therefore, any prospective child support award to John "should be offset against [John's] arrearage." Michelle also asserted that because John failed to comply with K.S.A. 23-3002 by filing a DRA or CSW with his 2017 motion—which Michelle specifically objected to at the time—"[h]e should not be rewarded with a retroactive award of support for his failure to properly file a response."

On January 8, 2020, the district court held a hearing on John's 2019 motion. The district court adopted John's proposed parenting plan relating to J.R., and his child support worksheet. Effective December 1, 2019, the district court ordered Michelle to pay John child support in the amount of $869 per month and ordered "said amount shall be off set against any arrearage owed by [John] to [Michelle] until such time as [John] has no arrearage."

4

Lastly, the district court took note of John's 2017 motion and Michelle's response notifying him of his failure to include the necessary supporting documents with the motion. The district court also found that John never scheduled the 2017 motion for a hearing.

Regarding John's request for retroactive adjustments, the district court held:

"9. The Court finds that Notice requires a [DRA] and [CSW] be filed with a Motion to Modify Child Support and that [Michelle] is entitled to due process wherein she is on notice regarding any assertions [John] may make on his proposed worksheet.

"10. The Court finds that [John] failed to file the proper documents with his [2017] Motion, that [John] was put on notice regarding the deficiencies of his filing, and that [John] failed to correct the deficiencies until November 2019.

"11. The Court finds that [Supreme Court Rule] 139, [K.S.A.] 23-3005 subsection (b) regarding retroactivity and K.S.A. 23-3002 leave the Court without jurisdiction to retroactively adjust the child support prior to the date wherein [John] perfects his Motion by filing the necessary DRA and [CSW].

"12. The Court finds that Counsel was unable to provide any case law decisions decided after the effective dates of the aforementioned statutes and rules and all case law cited pertains to the statutes prior to the requirement of the filing of a [DRA] and [CSW] with the Motion to Modify Support.

"13. The Court denies [John's] request to adjust his arrears in any amount and denies his request to terminate his support obligation as of the undisputed de facto change of custody.

"14. The Court finds the aforesaid ruling to be in the best interests of the minor child."

John appeals. Michelle did not file a responsive brief.

5

DENIAL OF REQUEST TO RETROACTIVELY TERMINATE THE CHILD SUPPORT
OBLIGATION AND APPLY A CREDIT TOWARDS THE CHILD SUPPORT ARREARAGE

Preliminarily, we note that on appeal John makes a broad, multi-faceted attack on the district court's ruling—the way the court construed John's motions, the applicability and legislative intent of Kansas statutes, and caselaw. These arguments markedly contrast with the equitable arguments John proffered to the district court at the hearing on the 2019 motion.

In the district court, John acknowledged the requirements of K.S.A. 2019 Supp. 23-3002, K.S.A. 2019 Supp. 23-3005(b), and Supreme Court Rule 139. John also recognized his failure in 2017 to submit the requisite DRA and CSE with his omnibus motion for a change in legal custody and modification of child support. Moreover, John admitted that Michelle responded in 2017 to his motion and alerted him to the fact that it was not accompanied by the necessary documents, and that if John subsequently complied with filing the DRA and CSW prior to a hearing on his 2017 motion, that the start date for any modification should begin on the first day of the month following the filing of the two documents. John also conceded that he never set his 2017 motion for hearing.

Given this factual and procedural background, while John acknowledged the lack of statutes or pertinent caselaw in support of his 2019 request for the court to retroactively terminate his child support obligation and adjust his arrearage, in the district court he argued the "general equity" of the situation. John's attorney asserted, "But we do feel that it's fair and equitable for the Court to consider the fact that [J.R.] has been living with [John] for this amount of time. And that based on that . . . he be given some retroactive credit for a termination of child support." In his closing argument, John's attorney dispensed with statutory, court rules, or caselaw and posed the rhetorical question: "Where's the fairness and equity in making someone pay an arrearage when the

child wasn't living with him—with the other Party and there's no dispute that the child was living with them? How is that fair?"

In the district court, Michelle responded to John's equitable argument:

"We don't believe it's fair to give him an adjustment when he had notice. This would be a different situation if he didn't know. He can't even claim he didn't know that his initial motion was improper. He was put on notice by me, when I filed the response, that his motion was improper. In fact, my response says . . . If he files the proper documents, that the Court [will] use that date to determine child support retroactivity.' So, . . . this is not a situation where he didn't know. He did know and made a choice not to do anything about it and should not be rewarded for that."

Michelle's attorney also sought to claim the equitable high ground by noting, "[t]here [were] substantial emotional hardships that go with having a parent incarcerated that my client was responsible for handling."

In her ruling from the bench, the district judge found that Kansas statutes and Supreme Court Rule 139 controlled the resolution of this dispute, and that John had failed to make a persuasive case for equity:

"Father relies on the argument of equity and fairness. Although [John's attorney], as an officer of the court, does represent that she could not find any cases exactly on point. Some of the older cases . . . [rely] on, sort of an equity argument and termination. [John's attorney's] representation is that it—it was prior to, most likely, changes in the law. Specifically, of the—the mandatory perfection provisions that are contained in [K.S.A.] 23-3002, subsection (b), requiring a DRA and a [CSW] to be on file."
          . . . .
"[M]oreover, as it relates to the issue of equity and fairness, that maybe in the end it all was balanced out, in light of the fact that during Father's incarceration, Mother bore the full cost of the children, medical costs and even so, put her into bankruptcy. And . . . that Father was unable to assist her in—to any significant . . . degree because of—of

the incarceration during the time period. *So, the Court believes that there is no—there's no grounds for fairness and equity that would—require the Court to go back retroactively.*" (Emphasis added.)

Although John argued equitable principles in the district court, he does not reprise this argument on appeal. An issue not briefed is deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). On appeal, John has abandoned the equitable argument that he presented in the district court, which the district court considered and denied.

Now, on appeal, John seeks to avoid the relevant statutory language of K.S.A. 2019 Supp. 23-3002, K.S.A. 2019 Supp. 23-3005(b) and Supreme Court Rule 139 by arguing that his request for *termination* of his support obligation and "associated recalculation or a credit on arrears does not constitute a *modification* of the amount of child support." (Emphasis added.) As a result, despite the controlling language of Kansas statutes and court rules relating to child support modification motions, John claims he should receive "credit toward his arrearage for the time elapsing between the de facto date of residential change of custody and the present."

It is necessary to state our standard of review. A district court's child support award is generally reviewed for abuse of discretion. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). However, the interpretation and application of the Guidelines are questions of law subject to unlimited review. *In re Marriage of Dean*, 56 Kan. App. 2d 770, 773, 437 P.3d 46 (2018). The interpretation of a statute is also a question of law over which appellate courts have unlimited review. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

John's 2017 and 2019 motions were not simply motions to terminate his support obligations but, in fact, were motions to modify the orders relating to legal and residential custody, parenting plan, and child support. The 2017 motion was entitled: "Omnibus Motion for Change in Legal Custody and Modification of Child Support." In the motion, John requested a "MODIFICATION in child support, *requiring new child support worksheets to figure proper child support amount to the proper parent*." (Emphasis added.) Ironically, while John noted the imperative to prepare new CSWs to resolve the child support issue, in her response Michelle informed him that his motion to modify child support was inadequate because he failed to include a DRA or CSW with the motion. Still, it is uncontroverted that the 2017 motion sought changes in legal and residential custody for J.R. and M.R., and modification of child support.

The 2019 motion was entitled: "Motion to Modify Parenting Plan, Child Support and Other Relief." In the motion, John requested abatement of his support obligations to J.R., but also sought "an order for child support that appropriately accounts for the change in custody and circumstances, wherein [Michelle] would pay the sum of $960.00 each month beginning on December 1, 2019." Similar to the 2017 motion, John sought the district court's approval of a new parenting plan, and an order for child support that would require Michelle to pay $960 per month—not simply an order to terminate his support obligation to J.R. effective February 1, 2017. On this occasion, however, John perfected his 2019 motion by including the required DRA and CSW as part of the motion.

The language in John's 2017 or 2019 motions is not vague or ambiguous. In the motions, John clearly sought to modify the operative legal and residential custody orders, parenting plan, and establish child support. Although not mentioned in the 2017 motion, in the 2019 motion John also specifically sought to terminate his child support obligation as to J.R. effective August 2017.

The question then becomes, given this factual and procedural background involving the 2017 motion, in ruling on the 2019 motion, did the district court err in determining that it could not retroactively modify child support prior to the date that John perfected his motion by filing the necessary DRA and CSW?

The district court held it was without jurisdiction "to retroactively adjust the child support prior to the date wherein [John] perfects his Motion by filing the necessary DRA and [CSW]." From the bench, the district court held it was "very clear that the perfection of the motion does require the filing of the DRA and the [CSW]" and reasoned that the "spirit of Supreme Court Rule 139 and [K.S.A.] 23-3002, subsection (b)" required filing the DRA and worksheet to allow the other party, Michelle, "to review those things that are filed [in John's] Motion to Modify."

The district court's ruling is consonant with Kansas law and our Supreme Court's rule. The Legislature codified the DRA and CSW requirements in K.S.A. 2020 Supp. 23-3002(b), which states "[a]ny person who files a motion requesting a child support order or modification order shall include in such filing a completed domestic relations affidavit and proposed child support worksheet." The Legislature added this subsection in 2014 and it was thus in effect at the time of John's 2017 and 2019 motions.

Complementing K.S.A. 2019 Supp. 23-3002(b), our Supreme Court has promulgated Supreme Court Rule 139 (2019 Kan. S. Ct. R. 207) which explicitly sets forth the requirements for individuals who are filing a motion to modify an existing support order:

"(b) **Domestic Relations Affidavit Required in Matter Involving Support.** A domestic relations affidavit must be included with:

. . . .

"(2) a motion to modify an existing support order.

10

. . . .

        "(c) **When Child Support Worksheet Required.** When child support is an issue, a child support worksheet—on the form set forth in the appendix of the Kansas Child Support Guidelines—must accompany the domestic relations affidavit.

. . . .

        "(e) **Service.**

. . . .

        "(2) **Motion to Modify Support Order.** A party filing a motion to modify a support order must serve the motion, along with a copy of the domestic relations affidavit—and a copy of the child support worksheet if the order is for child support—on the adverse party."

Regarding the 2017 motion, by failing to file a DRA and CSW with the motion, John did not comply with the requirements of either K.S.A. 2017 Supp. 23-3002(b) or Supreme Court Rule 139. Accordingly, his 2017 motion, which John never set for hearing, was procedurally insufficient and not proper for review by the district court.

Regarding the 2019 motion—which is the subject of this appeal—at the time John filed his motion on November 8, 2019, he fully complied with the requirements of K.S.A. 2019 Supp. 23-3002(b) and Supreme Court Rule 139. Under these circumstances, as found by the district court, another Kansas statute, K.S.A. 23-3005(b) comes into play. This statute provides: "The court may make a modification of child support retroactive to the first day of the month following the filing of the motion to modify." K.S.A. 2019 Supp. 23-3005(b). Under the plain and ordinary language of the statute, the district court is empowered to modify child support retroactive to the first day of the month after the filing of the motion. The district court's order terminating John's support and ordering that Michelle pay $869 per month to support J.R. was made effective December 1, 2019, which was legally permissible given the November 8, 2019 filing of John's 2019 motion.

11

Moreover, with regard to John's 2019 motion which sought a retroactive termination of child support with a credit against the resulting two years of arrearages, Kansas law provides that child support may be modified whenever circumstances make such a change proper, "but the modification operates prospectively only. [Citations omitted.]" *In re Marriage of Schoby*, 269 Kan 114, 117, 4 P.3d 604 (2000). "Kansas follows the general rule that, although a trial court has authority to modify a previous support order, the new order cannot increase or decrease amounts past due." *In re Marriage of Blagg*, 13 Kan. App. 2d 530, 531, 775 P.2d 190 (1989). Kansas courts have noted that they "have rarely allowed a retroactive order for child support." *In re Marriage of Bunting*, 259 Kan. 404, 410, 912 P.2d 165 (1996). In *Bunting*, our Supreme Court reasoned a retroactive modification was "contrary to the language of [K.S.A. 23-3002 predecessor] and prior case law." 259 Kan. at 411. The language of K.S.A. 23-3005(b), *Schoby*, *Bunting,* and *Blagg*, establish that the district court may not retroactively decrease an amount due for child support—which is what John is seeking in the 2019 proceeding. Absent some statutory or caselaw authority permitting retroactive decreases in child support, the district court did not engage in an erroneous exercise of judicial discretion.

John discounts the applicability of K.S.A. 2019 Supp. 23-3002, K.S.A. 2019 Supp. 23-3005(b) and Supreme Court Rule 139. He argues the

"request to end his support obligation at the time the minor child permanently moves to live with him is not a modification of child support reliant upon a DRA or a [CSW] for the court to make a calculation of child support. The termination of the support obligation and associated recalculation or a credit on arrears does not constitute a modification of the amount of child support, and therefore, the rule stated in *In re Marriage of Schoby*, 269 Kan. 114, 4 P.3d 604 (2000), that modification of the amount of child support may only operate prospectively does not apply in the present matter."

John argues the district court erred because it improperly reasoned that Michelle was entitled to due process in 2017 regarding his motion to terminate child support based on a de facto change of custody of which she was aware. But our Supreme Court has held that any effort to modify child support requires the filing of a motion, notice to the other party, and an opportunity to be heard. See *Brady v. Brady*, 225 Kan. 485, 489, 592 P.2d 865 (1979) ("Generally a proper motion, notice to the adverse party and an opportunity to be heard are prerequisites to a modification of a child support order."). More recently, our court considered the due process requirements for motions to modify child support under the Guidelines in *In re Marriage of Fuller*, 52 Kan. App. 2d 721, 371 P.3d 964 (2016) and concluded:

> "It is clear to us that the Supreme Court requires advance notice of any party's desire to modify child support, and it also requires a party opposing a modification of child support to apprise the proponent in advance of any area of possible disagreement, whether it be a dispute concerning any fact contained in the proponent's DRA or any dispute with regard to the calculation of child support which would be revealed in the opposing party's child support worksheet. See *In re Marriage of Jones*, 45 Kan. App. 2d 854, 856-57, 268 P.3d 494 (2010) (rules of construction for Supreme Court rules)." *In re Marriage of Fuller*, 52 Kan. App. 2d at 727.

Despite John's assurances that Michelle was on notice in 2017 because "the residence of the child was not disputed," the DRA and worksheet provide additional information essential to due process. Not only did Michelle have a right to be notified of this information, but she would also need to review the information contained in John's DRA and worksheet if she wished to challenge the motion or the facts in the DRA and worksheet before the hearing, as required by Supreme Court Rule 139(f). As we stated in *In re Marriage of Fuller,* "this is the essence of adequate notice required by the Due Process Clause of the Fourteenth Amendment." 52 Kan. App. 2d at 728. Quite simply, the district court did not err when it stated, "So there are multiple levels of notice and due process that are involved when DRAs and [CSWs] are filed, and what, in this Court,

13

believes to be the spirit of Supreme Court Rule 139 and [K.S.A.] 23-3002, subsection (b)."

In conclusion, the district court did not err in finding the "spirit of Supreme Court Rule 139 and [K.S.A.] 23-3002, subsection (b)" required filing the DRA and worksheet to allow Michelle, "to review those things that are filed for [in John's] Motion to Modify." If John had perfected his motion to modify child support in 2017, he could have terminated his child support obligation for J.R., obtained an order requiring Michelle to undertake that responsibility, and avoid accruing an arrearage for the next two years. Because John did not comply with K.S.A. 2019 Supp. 23-3002 and Supreme Court Rule 139 until November 8, 2019, pursuant to K.S.A. 2019 Supp. 23-3005(b) he was left with an arrearage that could not be retroactively credited earlier than December 1, 2019, the first day of the month following the filing of the 2019 motion.

Our holding is in keeping with our standards of review. First, utilizing our unlimited review, we conclude the district court did not err in interpreting and applying the plain language of the relevant statutes and Supreme Court rule. See *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016) (When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words.)

Second, we have reviewed the district court's judgment for an abuse of discretion. See *Skoczek*, 51 Kan. App. 2d 607. In this regard, we do not find the ruling arbitrary, fanciful, or unreasonable, based on an error of law, or based on an error of fact. See *Northern Natural Gas Co.*, 296 Kan. at 935. On the contrary, we find the district court, in addition to applying relevant Kansas law, also carefully weighed the equities of the unique circumstances presented by this case. Regarding the district court's determination that "there's no grounds for fairness and equity that would—require the Court to go back

14

retroactively" and terminate John's support obligation in addition to crediting his arrearage, we are unable to conclude that no reasonable person would arrive at the district court's conclusion. See *State v. Ransom*, 288 Kan. 697, 715, 207 P.3d 208 (2009) (A court abuses its discretion when no reasonable person would take the same view.). For all these reasons, the district court did not err.

Affirmed.