NOT DESIGNATED FOR PUBLICATION

No. 126,759

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

R.K.,
*Appellant*,

and

L.K.,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Submitted without oral argument. Opinion filed August 29, 2025. Affirmed.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Overland Park, for appellant father.

*Sarah Carmody*, of Sarah Carmody Law, LLC, of Overland Park, for appellee mother.

*Valerie L. Moore*, guardian ad litem, of Lenexa.

Before CLINE, P.J., MALONE and PICKERING, JJ.

PER CURIAM: This case arises out of a contentious postdivorce proceeding in which Father sought to modify the court-ordered parenting plan. Father challenges several procedural rulings on appeal, including sanctions and filing limitations the district court imposed on Father and his counsel and the court's decision not to sequester the case manager at trial. He also claims the district court abused its discretion when evaluating the facts for its ruling.

1

After careful examination of the record, we find Father has failed to preserve his constitutional objections or establish the district court abused its discretion in reaching its decision. We also note the court provided Father notice and an opportunity to object to its proposed impositions of sanctions and filing restrictions—to which Father did not avail himself. We therefore affirm the court's decisions.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother, parents to four children, divorced in November 2018. A few months before issuing the divorce decree, the district court appointed a case manager to make recommendations about custody, parenting time, psychological evaluations, personal conduct, financial issues, and educational needs of the children. Following a three-day trial in December 2019, the district court entered a parenting plan where it awarded temporary sole custody to Mother.

At that time, the district court also instituted a plan where Father would receive joint legal custody if he completed three phases: (1) intensive therapy and supervised time; (2) monitored access and modified legal custody (Mother would receive sole legal custody for medical decisions and the parties would share joint legal custody for educational decisions) after Father "genuinely demonstrated a true understanding and self-awareness of his past destructive behaviors" and "is prepared to co-parent productively with Mother"; and (3) continued monitored access and modified legal custody (joint legal custody for medical and educational decisions along with expanded parenting access for Father) if Father successfully prevailed on court ordered tasks. Father did not file a motion to reconsider nor did he appeal this order.

About a year later, Father, who was still in phase 1, filed a motion to accelerate the phased parenting plan and immediately transition the parties to the final phase. The parties litigated issues surrounding this motion over the next year, with Father filing three

2

motions for "'emergency relief'" in late 2021. At the December 9, 2021 hearing on these filings, the district court stated Father was raising issues which had already been decided and his pleadings were meritless and improperly filed to unnecessarily increase the cost of the matter. It then noted it was inclined to issue sanctions against Father and his counsel and gave Father seven days to brief why the court should not issue sanctions under K.S.A. 60-211 to Father and his counsel.

The district court entered a journal entry on January 7, 2022, ordering sanctions. In this journal entry, the district court noted the "extensive" court file in this "high conflict" matter which contained almost 250 court filings. The court found none of Father's "'emergency requests'" were submitted for a proper purpose or had a good-faith factual foundation. Instead, the court found the filings were "yet another effort by [Father] to needlessly increase costs to the parties, gain strategic advantages with respect to his own parenting time, and to re-litigate issues that were, in various respects, fully and finally adjudicated in 2019 or earlier or were so remote in time that they simply cannot constitute an 'emergency.'" The court also found Father's counsel had recited data and terms of what was intended to be a sealed document that contained nondisclosure provisions "in direct contravention of the parties' prior agreement and of the Court's prior Order."

The district court ordered Father to pay Mother's, the GAL's, and the case manager's attorney fees associated with addressing Father's three motions, along with ordering Father and Father's counsel to pay $2,500 each to the clerk of the court. After reviewing affidavits from counsel on fees and "[n]oting no objections from [Father]," the court ordered Father to pay $3,300 to Mother's counsel, $2,800 to the GAL, and $2,623.96 to the case manager.

Father's problematic filings, however, did not subside. In June 2022, the district court imposed "provisional temporary" filing restrictions on Father and ordered the clerk

of the district court not to accept any pleadings submitted by Father or his counsel, absent express written consent from the district court. The ruling discussed how Father filed "voluminous and extensive motions and other pleadings." For example, it noted that 60 filings occurred in a three-and-a-half-month span. Most of those pleadings were from Father or filed in response to his filings. Again, the court permitted Father to file objections to the filing restrictions before the restrictions took effect and stated it would rule on any such objections. The record reveals no filings by Father regarding these proposed filing restrictions.

In early 2023, the district court again sanctioned Father and his counsel under K.S.A. 60-211 for moving to compel the GAL to gather records. According to the court, this motion sought to "make an 'end run' around the discovery deadline." The court ordered Father to pay $3,500 and his counsel to pay $5,000 to the clerk of the court. This order also stated the court had notified the parties it was contemplating sanctions regarding Father's motion and it had invited a briefing schedule on the issues.

After a trial in April 2023, the district court filed its final judgment and court-ordered parenting plan, wherein it concluded Mother should have sole legal and physical custody of the children and granted Father specified visitation times. Father appealed this decision "including all associated rulings and orders."

REVIEW OF FATHER'S APPELLATE CHALLENGES

I. *Did the district court violate Father's procedural due process rights when it imposed filing restrictions and assessed sanctions against Father and his counsel?*

Father first argues the district court infringed on his due process rights by restricting his ability to file documents in court and wrongly issuing sanctions against him and his counsel. He claims he was denied meaningful notice about the possible

4

imposition of filing restrictions in violation of his rights under the United States and Kansas Constitutions. He also claims that since no motion for sanctions was filed,

> "and the Court did not set forth any reasons, or of what Father was being accused as a violation of *K.S.A. 60-211* for the contemplation of sanctions, Father had no notice as to the reasons that the Court contemplated sanctions against Father and counsel, rendering any response by [F]ather to sanctions virtually impossible."

To begin, both Mother and the GAL point out that Father fails to cite in the record where he raised this due process argument below. Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to cite "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court. See *State v. Paredes*, 34 Kan. App. 2d 346, 348, 118 P.3d 708 (2005) (holding that generally, appellate courts will not consider claims which have never been presented to the district court for a ruling). Or "[i]f the issue was not raised below," the brief must include "an explanation why the issue is properly before the court." Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). Father also provides no such explanation.

In *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020), the Kansas Supreme Court explained the purpose behind the preservation rule:

> "'This rule is not simply a "gotcha" from the appellate courts. The rule encourages litigants to fully present their cases to the trial court. All issues and claims are then tested by the adversarial process further refining and defining the facts and law in dispute. How can the district judge be expected to make a decision in consideration of arguments that are not brought before him or her? The rule also insures fundamental fairness in the proceeding. Parties deserve the opportunity to respond to all arguments made and present evidence to support their respective positions. If litigants can raise a matter for the first time on appeal, they would be free to, in essence, readjudicate the matter merely because they forgot to raise everything they wanted to before the trial court or second-guessed their tactical decisions at trial once they started preparing their

appellate brief. Just as we do not expect trial courts to support trial by ambush, neither should we tolerate the same on appeal. An appellant is not "permitted to feed one can of worms to the trial judge and another to the appellate court." [Citation omitted.]'"

Preservation is not a new requirement. In *Preservation: What is it Good For?*, 37 Pace L. Rev. 175, 178 (2016), author Yuval Simchi-Levi explained that preservation, as a concept, developed from the English writ of error model. This system, which governed criminal proceedings, limited a district court's authority to questions of law and empowered juries to be fact-finders. 37 Pace L. Rev. at 178. Simply put, "[t]o appeal a judgment, a writ of error was required, in which the party appealing the judgment alleged that the trial judge made an error." 37 Pace L. Rev. at 178. A court of appeals could only determine whether a district court erred if it had a record to review. This was unlike courts of equity in England that could review an entire case regardless of whether the parties raised certain arguments below. 37 Pace L. Rev. at 178-79. This American appellate procedure was consistent with an adversarial system and "with the 'new American' concepts of crime, checks and balances, and societal order." 37 Pace L. Rev. at 179-80. It ultimately serves "important purposes, such as promoting efficiency, reducing gamesmanship, and reducing the caseload for appellate courts." 37 Pace L. Rev. at 180.

In essence, preservation is a critical rule that ensures fundamental fairness, better developed arguments tested from the adversarial process, and efficiency in appellate procedure, while mitigating ambushing and gamesmanship against opposing parties. For these reasons, Father cannot expect to raise a swath of new arguments on appeal without permitting Mother, the GAL, or the district court to respond to these arguments below. Or, if Father made these arguments below, he must abide by Rule 6.02(a)(5)'s requirement that he cite where he asserted these arguments at the district court and where the court ruled on them. Since Father has done neither, we find he failed to preserve the constitutional challenges he now raises to the court's imposition of sanctions and filing restrictions.

Next, even if we were to consider the merits of Father's arguments, we see no support for them in the record. Father and his counsel were given notice that sanctions and filing restrictions would be issued and they were given an opportunity to respond each time the court provided this notice. The court also explained in detail the reasons behind its rulings.

At the end of his argument on this issue, Father also adds that his due process rights were denied when the district court "randomly closed discovery." Yet again Father offers no citation to the record showing where he made an argument about this alleged action. As a result, this argument is also deemed waived or abandoned. *State v. Wilson*, 281 Kan. 277, 287, 130 P.3d 48 (2006). And, again, a review of the record reveals the court stated that discovery was closed and Father was not allowed to offer his proposed expert witness at trial because Father was offering the expert in an attempt to relitigate past issues that were determined when the case was previously tried. So again Father mischaracterizes the record and the district court's actions.

For these reasons we find Father's due process arguments to be unpreserved and without merit.

II. *Did the district court abuse its discretion when it modified the parenting plan?*

Father next contests the district court's parenting time allocation because he believes the court adopted the case manager's recommendations instead of properly weighing the facts. In response, both Mother and the GAL point out other evidence and factors the court considered in addition to the case manager's recommendations.

Because the district court is in the best position to make a determination about a child's welfare and best interests, appellate courts review decisions about a child's custody, residency, visitation, or parenting time under K.S.A. 23-3201 et seq. for an

abuse of discretion. See *Cheney v. Poore*, 301 Kan. 120, 128, 339 P.3d 1220 (2014). Appellate courts review challenges to specific factual findings in support of these best interests determinations by viewing the evidence in the light most favorable to the prevailing party to determine whether they are supported by substantial competent evidence and support the court's legal conclusion. *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 862, 491 P.3d 652 (2021).

Father's chief concern with the district court's parenting time allocation is the weight it gave the case manager's recommendations, claiming the court "completely relied upon [the case manager] in making all recommendations concerning custody." Father contends the court should have considered evidence provided by other witnesses instead of the case manager. Father supports his claim by mainly questioning the case manager's credibility and arguing the other experts were more credible. Yet because district courts witness live testimony, and appellate courts are only presented with a written transcript of that testimony on appeal, appellate courts cannot reweigh conflicting evidence, evaluate witness credibility, or determine questions of fact. *State v. Shockley*, 314 Kan. 46, 53, 494 P.3d 832 (2021).

Furthermore, as the GAL explains, the district court relied on other evidence besides the case manager's recommendations to reach its final decision. The GAL noted that the court weighed, among other things:

- the uncontroverted testimony presented at trial,
- Father's inability to complete phase 1 of the parenting plan,
- Father's inability and unwillingness to respect the continued relationship between Mother and the children along with his inability to coparent,
- Father's witnesses who were of "minimal probative value,"
- Father's testimony being "mere[ly] lip service,"

8

- the children's views and desires, and
- Father's registration requirements under the Kansas Offender Registration Act.

And, as Mother points out, when Mother filed a motion to alter or amend the district court's decision, Father responded by claiming the district court "took ample time to carefully consider and weigh all the testimony and evidence received at trial before rendering a decision" and "did not rely on one or two pieces of evidence or testimony or factors to make its decision and ruling . . . but rather examined carefully and thoroughly all evidence and testimony to reach what the Court deemed to be a fair, just, and equitable ruling/decision." We agree with Mother that Father cannot rely on the district court's analysis of the evidence only when it suits his position.

Father further asserts that the case manager did not have an order of appointment in place for her participation for two years, so her participation "tainted the process." He makes this contention several times yet never provides a record citation to support his material statement that the case manager did not have proper authority to serve, nor does he cite any legal authority to accompany those factual assertions. Pressing a point without supporting authority or without showing why the argument is sound despite the lack of authority results in the argument being deemed waived or abandoned. *Wilson*, 281 Kan. at 287.

A review of the record reveals the district court ordered case management in September 2018. Although Kansas Supreme Court Rule 910(c)(1)(B)(i)-(ii) (2025 Kan. S. Ct. R. at 613-14), requires a case manager's appointment to not exceed 36 months unless the district court determines case management is still appropriate and reappoints the same case manager, Rule 910 was not adopted until January 1, 2020. And, in September 2021, the case manager nevertheless raised the question of whether her appointment would expire. In response, the district court specifically found that case management was appropriate and ordered the case manager to continue serving under the

9

initial orders. Father is therefore incorrect that the case manager's appointment term expired.

For these reasons, we find Father's arguments are unpersuasive. Not only does he expressly ask us to reweigh the case manager's credibility and the evidence, but he also fails to support his arguments with factual support in the record.

III. *Did the district court violate Father's procedural due process rights when it permitted the case manager to stay during trial despite the pretrial order saying otherwise?*

Father lastly argues that the district court violated his due process rights by not sequestering the case manager, Jennifer Hagg, at trial before her testimony. The pretrial order stated: "Witnesses including the case manager, but other than parents themselves, will be excluded from the trial until after their testimony has been completed, so that they cannot hear the testimony of other witnesses." Yet at trial, the district court and the parties had the following exchange:

> "THE COURT: . . . Anything we need to take up as a preliminary issue before we get started here today?
>
> "[FATHER'S COUNSEL]: The only thing I would suggest is the pretrial order says the witness rule will apply. I'm not sure who else is in the courtroom here, but I know it also includes Ms. Hagg, so I would ask that that rule be enforced and that the witnesses be asked to step out.
>
> "THE COURT: [Mother's counsel]?
>
> "[MOTHER'S COUNSEL]: Sorry, that's interesting. I think that's an issue that would've been taken up at the pretrial conference. We all had Ms. Hagg on our witness list and none of us subpoenaed her because we all knew she was going to be here full-time which is why she asked for [a] trial deposit as well.
>
> "I think that it would be best for the case manager to be here and, I mean, she's going to be on the case after this and she'll hear—she's the one who knows the most about the parties. I don't think anyone will testify to anything she doesn't already know. So I've

never had a case manager—the witness rule apply to the case manager. I guess that is a new one for me.

"THE COURT: [GAL]?

"[GAL]: Judge, it is strange to me, too. Obviously she is not a party, but I did not subpoena her. I did name her as a witness. More so as a possible rebuttal witness than anything, Your Honor, from a guardian ad litem's witness list, if you will. Judge, I don't think that's proper.

"I think that the case manager needs to be in the courtroom. She is being paid to be in the courtroom, Your Honor, by both parties. I would think it would be inappropriate to invoke the witness rule for a case manager who, and I agree with [Mother's counsel], knows as much history about the case as anyone in the courtroom.

"THE COURT: All right. Well, the Court has invoked the witness rule. However, the Court does not believe that that should apply to the case manager in this case.

"Case manager's recommendations have been placed at issue and to the extent that she needs to be here to articulate the reasons why and address statements that the parties may make, that may be contrary to what she has learned throughout the course of her work in the case, I think, is important.

"I do think it's a strange request from [Father] and, quite frankly, if it was something that she was contemplating, I think that's something that should've been raised long before today. So the motion is going to be denied as it relates to the case manager. But the Court is going to invoke the rule as to any other witnesses.

"So everyone needs to look around and see if they have any witnesses that they intend on calling and make sure that they leave the courtroom other than the case manager.

"[FATHER'S COUNSEL]: She's my witness. I just wasn't sure.

"THE COURT: You better make sure she leaves. Since you're the one who raised the issue.

"[FATHER'S COUNSEL]: And, Your Honor, I only raised it because it was in the pretrial order. I didn't want to—

"THE COURT: I understand."

Father, Mother, and the GAL all listed Hagg as a witness in the pretrial order.

11

Father argues on appeal that since he asked for Hagg to not be in the courtroom before her testimony, his procedural due process rights were violated by allowing her to stay. Yet, again, Mother and the GAL correctly note that Father fails to cite where he raised any due process argument to the district court.

Despite Father's failure to follow Rule 6.02(a)(5), he believes we should evaluate his claim because "'resolution of the question is necessary to serve the ends of justice or to prevent denial of fundamental rights.'" *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). This is an exception that permits parties to raise an issue for the first time on appeal. 309 Kan. at 995. Father believes this exception applies because his argument for this third issue requires our consideration of his constitutional procedural due process rights.

Still, he fails to articulate how a district court permitting a witness' trial presence before testifying after a pretrial order said otherwise violates his procedural due process rights. He does not cite any legal authority supporting this claim. The first step in reviewing a procedural due process claim is to determine whether a protected liberty or property interest is involved. *State v. Wilkinson*, 269 Kan. 603, 608-09, 9 P.3d 1 (2000). Father omits any discussion on what type of interest is invoked because of the district court's actions. Without proffering any argument on whether a protected liberty or property interest is involved, Father fails to show how his claim affects a constitutional right. And making a conclusory statement that the court's actions simply implicate a constitutional right is insufficient.

As explained above, requiring the parties to give the district court the opportunity to rule on their arguments promotes judicial economy and reduces gamesmanship and unfair surprise on appeal. Father's argument is unpreserved for review and he has failed to establish the existence of an exception to our general preservation requirements.

Again, even if we considered the merits of Father's arguments he has failed to explain how he was prejudiced by the district court's modification of the pretrial order. Father is correct that the aim of witness sequestration "is to exercise a restraint on witnesses tailoring their testimony to that of earlier witnesses and aids in detecting testimony that is less than candid." *State v. Heath*, 264 Kan. 557, 589, 957 P.2d 449 (1998). Father's theory is that since Hagg was permitted to stay throughout trial, she had an opportunity to "contemplate[]" witness testimony. He does not, however, expressly state that because Hagg heard witness testimony, she was able to curate her own testimony in any particular way. He provides no examples of any testimony she provided that was supposedly benefitted by her trial presence, including anything that she changed based on her ability to listen to the other witnesses. As the district court pointed out, the case manager's recommendations were contested at trial and she needed to listen to the testimony of the trial witnesses to explain her recommendations or address any trial statements which may be contrary to what she learned in her work on the case. Father failed to address this reasoning by the district court either at trial or on appeal.

Whether to sequester witnesses in civil trials falls within the district court's broad discretion. *R.W. v. C.M.*, No. 123,469, 2022 WL 2904029, at *11 (Kan. App. 2022) (unpublished opinion). Father does not address this discretion or explain how he was harmed by the court's exercise of it.

Besides Father's arguments concerning procedural due process, Father also makes a brief comment about how "[M]other [was] allowed to participate at trial having not fully funded the professional as Father had." But he does not provide a pinpoint reference to where he raised an issue with this below nor does he ask us to provide any relief for this argument. We therefore find this stray claim is unpreserved as well.

For these reasons, we find Father has failed to establish the district court erred by amending the pretrial order to allow the case manager's presence at trial.

IV. *Mother's attorney fees request*

After appellate briefing concluded, Mother filed a motion requesting appellate attorney fees under Kansas Supreme Court Rule 7.07(b), (c) (2025 Kan. S. Ct. R. at 52) and Kansas Supreme Court Rule 5.01 (2025 Kan. S. Ct. R. at 31). Father asks us to deny Mother's motion as untimely.

The issue of the district court's authority to award attorney fees is a question of law over which appellate review is unlimited. *In re Marriage of Williams*, 307 Kan. 960, 982, 417 P.3d 1033 (2018). And interpretation of a Supreme Court Rule is a question of law subject to unlimited review. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 451, 437 P.3d 929 (2019).

A court generally may only award attorney fees when authorized by statute or by agreement of the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). "An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Kansas Supreme Court Rule 7.07(b)(1) (2025 Kan. S. Ct. R. at 52). A party seeking attorney fees on appeal must file a motion no later than 14 days after the day argument is waived or the date of the letter placing the case on the nonargument calendar, whichever is later. Supreme Court Rule 7.07(b)(2).

Father is correct that Mother filed her motion too late. Mother's 14-day clock for her attorney fees motion started when this court notified the parties on February 24, 2025, that this case was assigned to the nonargument calendar. Mother filed her motion on March 12, 2025, which was more than 14 days past the nonargument calendar letter.

Mother contends that since no party filed a motion for oral argument within 14 days of February 24, 2025, oral arguments were therefore waived on March 10, 2025.

14

Meaning, according Mother, she complied with Rule 7.07(b)(2) because she filed her motion no later than 14 days after the day argument was waived. Yet Mother misunderstands Rule 7.07(b)(2). Supreme Court Rule 7.02(c)(4) (2025 Kan. S. Ct. R. at 44) expresses that "[w]hen a case is placed on the summary calendar, it is deemed submitted to the court without oral argument unless a party's motion for oral argument is granted." That motion must be "filed with the clerk of the appellate courts no later than 14 days after the clerk mails notice of calendaring." Supreme Court Rule 7.02(c)(4) (2025 Kan. S. Ct. R. at 44). This rule means that once a case is placed on summary calendar, there will be no oral argument unless a motion is granted. In other words, when a case is placed on summary calendar, there is no oral argument to waive because the case was submitted to the court without oral argument. See *In re Marriage of Dean*, 56 Kan. App. 2d 770, 778-79, 437 P.3d 46 (2018) (motion for attorney fees filed more than 14 days after letter sent assigning case to nonargument calendar denied as untimely); see also *In re Marriage of Humphries*, No. 121,442, 2020 WL 6816222, at *9 (Kan. App. 2020) (unpublished opinion) (letter assigning case to summary argument calendar, not notice of summary calendar date, triggers time for filing motion for appellate attorney fees). We therefore deny Mother's motion for attorney fees as untimely.

For the reasons stated above, the decision of the district court is affirmed.

Affirmed.