NOT DESIGNATED FOR PUBLICATION

No. 127,799

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

C.M.J.,
*Appellant*,

and

B.J.J.,
*Appellee.*


MEMORANDUM OPINION

Appeal from Sedgwick District Court; KELLIE E. HOGAN, judge. Oral argument held May 20, 2025. Opinion filed August 1, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Richard A. Samaniego*, of Gibson Watson Marino LLC, of Wichita, for appellant.

*Stephen M. Turley* and *Makaela B. Stevens*, of Hinkle Law Firm LLC, of Wichita, for appellee.


Before MALONE, P.J., SCHROEDER and GARDNER, JJ.


PER CURIAM: C.M.J. (Mother) and B.J.J. (Father) were divorced in late 2022. The district court later modified the child custody order at Father's request. Mother appeals this decision and related orders finding her in contempt, sanctioning her for failing to purge the contempt, awarding Father attorney fees, and denying a reduced appeal bond. Mother also appeals the denial of her motion for a change of judge. Our review shows that Mother's arguments fail to establish error except for the district court's decision for Mother to pay all the orthodontia costs. We reverse and remand that issue for additional consideration.

1

Mother and Father married in December 2005 and had two children together, A.C.J. (Son) and C.A.J. (Daughter) in 2008 and 2011.

Mother petitioned for divorce in April 2020. The district court approved a temporary parenting plan and ordered the parents to attend a parenting workshop in May 2020. The district court later ordered the parties to participate in domestic conciliation. In March 2021, Mother moved to suspend Father's parenting time, claiming that Father had allowed Daughter to see inappropriate upsetting material on his computer. The district court entered an agreed protective order and later ordered Father to participate in family counseling with the children.

After additional filings, Father moved to find Mother in indirect contempt for refusing him parenting time on April 21, 2021. Father filed a similar motion two months later, arguing that Mother had refused to sign release forms to allow communications between Father and the children's therapists. The district court scheduled hearings on the motions, but they were seemingly not addressed until June 2022.

Meanwhile, the district court interviewed the children in May 2021. They relayed concerns about Father. Son said that Father was angry and he feared that Father might physically harm Mother. The district court appointed Dr. Columbus B. Bryant to conduct counseling with Father and the children to improve communications and restore a normal parenting relationship. In May 2022, Bryant reported that the children viewed Father as excessively angry and potentially violent. He found that progress in treatment would require Father to further address his personal issues.

The following week the domestic conciliator recommended that Father not have shared residential custody, as that would not meet the children's needs. She also recommended that Mother and Father be referred to full case management.

*Divorce Hearing*

The district court held a three-day evidentiary hearing on Mother's petition for divorce in June 2022. Mother and Father testified as did Son's individual therapist, Joel Ybarra. Along with the general divorce matters, Father presented evidence in support of his motions to find Mother in contempt.

The district court entered a divorce decree, permanent parenting plan, and custody worksheet in late December 2022 that adopted the domestic conciliator's custody and parenting time recommendations, granting the parents joint legal custody and Mother primary residential custody. Father was awarded parenting time and was ordered to pay child support. Mother was ordered to pay spousal support to Father to offset his support obligations.

As for Father's motions, the district court found Mother in contempt of the court's orders for failing to follow the court ordered parenting plan on April 21, 2021. But the district court found that Mother could purge herself of the contempt by following the court ordered parenting plan going forward. The district court declined to find Mother in contempt based on other events. After another hearing, the district court awarded Father $15,000 in attorney fees, finding Mother had caused unnecessarily litigation related to the contempt filings.

*Mother's Postdivorce Motion to Alter or Amend*

Mother then moved to alter or amend some of the district court's rulings, as well as its attorney fees determination. Father responded and moved for additional fees. About a month later, Father filed another motion to find Mother in contempt, arguing she had never paid the ordered equalization payment of $205,812.95 or the $15,000 award of attorney fees. The parties agreed to two of the monetary adjustments that Mother proposed, so the district court granted those requests but denied Mother's remaining claims.

Mother moved to set a supersedeas bond and stay proceedings and appealed the district court's rulings. Noting Mother's appeal, the district court removed the hearing on Father's pending motion to find Mother in contempt from the docket.

*Father Moves to Modify Child Custody*

After Mother appealed, Father moved to modify the court's custody order, alleging a material change of circumstances. Father also argued that Mother had violated the parenting plan again, thus failing to purge her previous contempt, and asked the district court to sanction Mother by imposing a jail sentence. Father later amended his motion, claiming Mother had committed additional parenting plan violations, and requested additional attorney fees.

Although Father claimed that Mother violated the parenting plan many times, his primary assertion was that Mother had moved the children to a new residence and had transferred them to a new school without giving him notice. Father asked the district court to grant him primary residential or shared residential custody.

In response, Mother claimed that she could no longer afford to live in her house, which had been awarded to her in the divorce, and thus had sold it. She had leased property under a mistaken belief that her new home was in the same school zone, so she had to transfer the children to a different school. Mother asked the district court to deny Father's motion to change the parenting plan, to allow the children to attend the new school, and to assign a case manager.

*Hearings on Father's Motion*

The district court held a preliminary hearing on Father's motion via Zoom on August 24, 2023. Father explained his position and Mother explained hers.

The district court questioned Mother about her timeline and the extent of her efforts to keep the children at their original school. The district court found that the dates and other information in Mother's exhibits suggested that Mother was not being entirely truthful. Still, the district court denied Father's request to order the transfer of the children to their previous schools, as another transfer would only "punish" the children and "further alienate [them] or cause stress in the parent-child relationship with the [F]ather." The district court was also concerned about whether the parenting plan was being followed and concluded that an evidentiary hearing was needed to consider Father's arguments about custody, the parenting plan, school issues, and any penalty for Mother's contempt.

The district court's related order expressed concern about Mother's conduct.

> "The Court is deeply troubled that the Court's order that the parents are joint custodians is not being followed. The Court's prior order stated that the parenting plan was in the children's best interest so long as Mother followed the parenting plan. Mother unilaterally changed schools and put Father in the impossible position of enforcing the

5

court's order granting parents equal decision making authority or requiring that his children change schools after two weeks at their new schools. The Court believes that the trauma and anxiety caused by reversing Mother's unilateral decision would not be in the children's best interests. The Court must consider whether or not the current parenting plan continues to be in the children's best interest. . . . The Court will consider what changes to custody, residency, and/or parenting time would be in the children's best interest. The Court will also consider Father's request for sanctions."

The court then held an evidentiary hearing on Father's motion to modify the custody order and to sanction Mother. During that two-day evidentiary hearing, the parties presented testimony from six witnesses which we summarize in our analysis.

*District Court's Ruling on Father's Motion*

The district court granted Father's motion to change custody in January 2024. It found a material change in circumstances and found it in the children's best interests for Mother and Father to share residential custody and to maintain equal parenting time. The district court also found that Mother had not purged her previous contempt because she had failed to follow the parenting plan. The district court refused, however, to impose a jail sentence and instead ordered Mother to attend a co-parenting workshop. It also found that Mother had caused unnecessary litigation and agreed to award Father attorney fees.

*Motions to Alter or Amend the District Court's Modified Judgment*

After the district court modified its initial orders, Father moved to alter and amend. Mother responded, challenging each of Father's claims. She also moved to alter or amend the district court's ruling, claiming that nearly all the district court's factual findings lacked support in the evidence.

6

After yet another hearing, the district court ruled on some arguments and found that the parties agreed to others. The district court ordered Mother to pay direct expenses for the children and to pay the $15,000 award of attorney fees to Father within 90 days. The district court denied Father's request to alter or amend the penalty for Mother's contempt, noting that Mother had already completed the co-parenting workshop.

Father submitted a proposed journal entry of judgment, addressing the remaining issues raised at the hearing. Mother objected. In her objection to Father's child support worksheet, Mother suggested that Father had provided insufficient, outdated, or false information regarding his yearly income. Mother also argued that discovery was required, and if discovery showed that a modification was needed, the modification should be applied retroactively.

In the same filing, Mother moved the district court to hold a new hearing to elicit testimony from Bryant. She explained that Bryant had testified by Zoom at the hearing on Father's motion to modify but his testimony had not been recorded. Mother argued that his testimony was necessary and a written statement would not suffice. In response, Father revised the proposed journal entry based on her objections.

The district court adopted this revised journal entry. In doing so, the district court ordered Mother to pay all orthodontia costs and denied her request for additional findings. The journal entry stated that Father's income had been determined based on the information provided by both parties' proposed child support worksheets, domestic relations affidavits, arguments, and proffered exhibits. It noted that the district court maintains continuing jurisdiction over matters related to children and may modify child support under certain circumstances.

The district court also denied Mother's request for a new hearing to elicit Bryant's testimony. The district court instead ordered the parties to prepare a written statement of the evidence from the best available means if either intended to appeal. Mother submitted a proposed statement as ordered, which the district court reviewed, edited, and ultimately approved.

*Mother's Motion for a Change of Judge*

Mother also moved for a change of judge in June 2024, which the trial court denied. Mother then submitted an affidavit to the chief judge detailing the basis for her belief of bias. After reviewing each claim, the chief judge denied Mother's request, finding Mother failed to demonstrate bias.

*Appeal*

Mother timely appealed the district court's orders deciding custody, support, attorney fees, and medical expenses as well as the district court's postjudgment rulings. We consolidated the cases for appellate review.

*Mother's Motion to Reduce Appeal Bond or Release of Escrow Funds*

After appealing, Mother asked the district court to reduce the supersedeas bond, release the funds held in escrow by the title company to secure enough money to afford an appeal bond, or allow her to make a promise to pay. That motion was denied.

ANALYSIS

I.     *Does this court have jurisdiction to review Mother's appeal?*

Before we reach Mother's claims of error, we must address Father's assertion that this court lacks jurisdiction to review Mother's claims because the district court did not enter a final ruling on child support.

Whether jurisdiction exists is a question of law, subject to unlimited review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022). When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013).

The right to appeal is statutory and is not contained in the United States or Kansas Constitutions. *Wiechman v. Huddleston*, 304 Kan. 80, 86, 370 P.3d 1194 (2016). Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018). The relevant statute here, K.S.A. 2023 Supp. 60-2102(a)(4), allows a party to appeal "as a matter of right from . . . [a] final decision in any action." So without a statutory grant of authority to the contrary, this court has jurisdiction to rule only on final decisions. See K.S.A. 2023 Supp. 60-2102(a)(4).

A final decision generally disposes of the entire merits of a case and leaves no further questions or the possibility of future directions or actions by the district court. *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015). The term "'final decision' is self-defining and refers to an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case." *In re T.S.W.*, 294 Kan. 423, 433, 276 P.3d 133 (2012).

9

A divorce action combines several issues, e.g., child custody, child support, parenting time, maintenance, and property division. In a typical divorce case, all claims for relief are tried or settled at the same time. *State v. Hendricks*, 52 Kan. App. 2d 737, 741, 372 P.3d 437 (2016). But when the trial court enters a divorce decree on a different date than it enters final rulings on other issues, such as child support, "the entry of whichever order is later fixes the date from which the time for taking an appeal runs, and upon such an appeal all rulings of the trial court can properly be reviewed by this court." *McCain v. McCain*, 219 Kan. 780, 783, 549 P.2d 896 (1976). So a decision is not final until all relevant issues are resolved. Still, the court has continuing jurisdiction to modify any prior child support order within three years of the date of the original order or a modification order when a material change of circumstances is shown. K.S.A. 23-3005(a).

Father relies on our Supreme's Court's decision in *Kaelter* in arguing appellate jurisdiction is lacking. In that case, our Supreme Court reversed this court and held the district court did not enter a final decision in an action deciding paternity, custody, and support. Our Supreme Court found that the district court did not resolve an issue about unreimbursed medical expenses, so its decision did not meet K.S.A. 2013 Supp. 60-2102(a)(4)'s finality requirement. The district court's journal entry of judgment noted that the issue could not be determined because the parties had not provided enough documentation, and that the district court anticipated the parties would later exchange information to resolve the issue. *Kaelter*, 301 Kan. at 247-48, 250.

Mother counters that unlike in *Kaelter*, nothing in the journal entry of judgment here suggests that the decision is not final. The district court adopted the revised, proposed findings submitted by Father. And that journal entry shows that the district court modified its previous findings regarding child support, ordering Father's child support obligation to terminate on January 31, 2024. The district court based this decision on the financial information provided by the parties, which stemmed from the parties'

2023 tax information. The journal entry noted the district court's continuing jurisdiction to modify its findings on the parties' finances and child support obligations. The decision appears to be final.

But Father's challenge is not based on the language in the journal entry of judgment. Father argues that the district court made findings in an accompanying order which shows child support has not been finally determined. Father first made this argument after Mother's appeal, yet before the parties submitted their appellate briefs, in his motion to dismiss.

In response, Mother argued that *Kaelter* is distinguishable. She also claimed that judicial estoppel prevents Father from arguing the decision is not final because he successfully argued in the district court that the decision was final and acknowledged that Mother was entitled to review Father's updated financial information and could later move to modify if she could show a material change. Our motions panel denied the motion to dismiss on present showing but allowed the parties to brief the issue.

The accompanying order that Father references states that the "[p]arents are conducting discovery to confirm Father's income is correct. Should discovery reveal that Father's income was incorrect, either party can seek a modification retroactive to February 1, 2024." But unlike in *Kaelter*, the district court did not find that this issue would necessarily require additional consideration. Instead, the district court here "used the number submitted by both parties for Father's income" to determine child support. The journal entry of judgment shows that the district court based this finding on "its own knowledge of the case, its prior findings, the parties' proposed child support worksheets, the parties' domestic relations affidavits, counsel's arguments, and the parties' proffered exhibits." So unlike in *Kaelter* and similar cases such as *Buhler v. McCormac*, No. 121,360, 2020 WL 1482421, at *1-4 (Kan. App. 2020) (unpublished opinion), the district

11

court did not find that it lacked enough evidence to decide the issue. Rather, the district court entered a ruling based on the evidence presented by both parties.

Even though the district court noted that Mother continues to investigate Father's income, the district court did not order Father to turn over any discovery. The district court correctly found that each party has "a continuing obligation to notify the other party of a material change in financial circumstances that could justify a change in child support." We find the child support order to be final, thus we have jurisdiction.

Father also takes issue with the district court's finding that the parties may seek retroactive modification of the child support determination. It is unclear whether the district court has authority to grant retroactive application as its order suggests. Cf. K.S.A. 23-3005(b) (permitting a modification of child support retroactive to the first day of the month after the motion to modify is filed); *In re Marriage of L.S. and D.J.*, No. 125,656, 2024 WL 2795275, at *8-9 (Kan. App.) (unpublished opinion) (discussing district court's authority to retroactively order modified support obligations), *rev. denied* 319 Kan. 834 (2024). But the district court has not yet ordered retroactive child support, so the legality of that type of ruling is not properly before us for review. See *Baker v. Hayden*, 313 Kan. 667, 672, 490 P.3d 1164 (2021) (noting that courts are generally precluded from giving advisory opinions).

II.    *Did the district court err by finding Mother failed to purge herself of contempt and by imposing a sanction?*

Mother's first appellate argument challenges the district court's ruling that she failed to purge herself of her contempt of the parenting plan. She asserts that the district court violated due process and lacked jurisdiction to sanction her under these circumstances. She alternatively argues that the evidence does not support the district court's finding that she failed to purge her contempt.

12

*Overview of the District Court's Ruling*

We first clarify the facts. Father suggests that the district court found Mother in indirect contempt of the parenting plan several times, but this is incorrect. In December 2022, the district court found Mother in indirect contempt of a previous parenting plan for an act that she committed on April 21, 2021. The district court's order did not specify what Mother did to violate the order. But Father's motion, related affidavit, and arguments at the divorce hearing alleged that on April 21, 2021, Mother denied Father court-ordered parenting time. The district court provided Mother the option to purge her contempt by "following the court ordered parenting plan going forward."

Around a year later, Father moved to impose a sanction, arguing Mother had violated the parenting plan again. Father amended that motion about three months later, arguing other violations. Because Mother had to follow the parenting plan to purge her contempt, Father's allegations supported a request to both sanction Mother and to find her in contempt again. Father did not specifically request both, however, and the district court granted only his request to sanction Mother for her failure to purge the 2021 contempt.

The district court ultimately agreed that Mother had continued to violate the parenting plan in various ways—by failing to effectively communicate with Father and to notify him of changes in the children's primary residence, schools, and therapy. The district court concluded that these violations showed Mother failed to purge the contempt. But the district court did not find Mother in contempt for committing these new violations. So contrary to Father's claim, the district court made only the one contempt finding—in December 2022.

A. *Mootness*

Father claims that any error in the court's finding that Mother failed to purge her contempt is moot because the district court already decided his motions for a sanction and declined to impose a jail sanction.

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). An issue on appeal will be dismissed as moot only if it can be clearly and convincingly shown that the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *Huddleston*, 304 Kan. at 84. A case is not moot if "it may have adverse legal consequences in the future." *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 4, 286 P.3d 866 (2012).

Mother relies on an exception to the mootness doctrine, which arises when cases "raise issues that are capable of repetition and present concerns of public importance." *Roat*, 311 Kan. at 590. But "public importance means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals." *State v. Hilton*, 295 Kan. 845, Syl. ¶ 5, 286 P.3d 871 (2012). See also *State v. Hayden*, 52 Kan. App. 2d 202, 206, 364 P.3d 962 (2015). Mother fails to meet that standard.

Father relies on *In re Browning*, 1 Kan. App. 2d 652, 573 P.2d 1095 (1977). But the parties held in contempt in *Browning* and in the cases referenced in that opinion purged themselves of their contemptuous conduct. 1 Kan. App. 2d at 652-63. Father notes that Mother complied with the district court's order to complete a co-parenting workshop. Though true, it is still not clear that this purged Mother's contempt. The

14

district court did not state the contempt would be purged after Mother completed this class, nor does the record show that the district court vacated the order finding Mother in contempt. So *Browning* fails to show that this appeal is moot. Cf. *State v. Fuller*, No. 75,347, 1997 WL 35435375, at *2 (Kan. App. 1997) (unpublished opinion) (similarly finding *Browning* inapplicable).

Because Mother's contempt has not been cleared, Father's argument is tantamount to a claim of acquiescence. But Mother cannot be found to have acquiesced in the district court's judgment simply because she complied with the sanction order after opposing Father's motion to impose a sanction. See *Harsch v. Miller*, 288 Kan. 280, 292, 200 P.3d 467 (2009); see also *In re Metcalf Associates-2000, L.L.C.*, 42 Kan. App. 2d 412, 423-24, 213 P.3d 751 (2009) ("A party need not risk contempt of court to avoid an accusation of acquiescence."). And in domestic cases we do not strictly apply the rule that acquiescence cuts off the right of appeal, because of equitable considerations involved in these cases. See *In re Marriage of Yount & Hulse*, 34 Kan. App. 2d 660, 667, 122 P.3d 1175 (2005).

Finally, although Mother was not jailed for her contempt, the record fails to show that she could never be; the district court found that Mother failed to purge the contempt because she violated the parenting plan again. So unless the contempt finding is vacated, Mother could face more sanctions for another violation. We thus find this issue is not moot.

### B.     *Due Process and Jurisdictional Claims*

We next address Mother's procedural claims that the district court denied her due process and divested itself of jurisdiction to sanction her.

Courts may exercise their authority to hold parties in contempt to maintain decorum in proceedings, to punish those obstructing the administration of justice, and to

15

enforce judgments. This power is inherent in the judiciary and necessary to the due exercise of the court function. *In re J.T.R.*, 47 Kan. App. 2d 91, 94, 271 P.3d 1262 (2012). That said, the procedural requirements in a contempt of court action are regulated by statute: "No inherent power to punish for contempt exists independent of K.S.A. 20-1201 et seq." *State v. Jenkins*, 263 Kan. 351, 352, 950 P.2d 1338 (1997). Thus, the applicable statutes must be followed before a sanction may be imposed on a contemnor. *State v. Delacruz*, 307 Kan. 523, 529-30, 411 P.3d 1207 (2018). A contempt order resulting from procedures that violate the statutes may be void for lack of jurisdiction. See, e.g., *Padron v. Lopez*, 289 Kan. 1089, 1106-07, 220 P.3d 345 (2009). The question whether the applicable statutory procedures were followed is subject to unlimited review on appeal. *In re Paternity of S.M.J. v. Ogle*, 310 Kan. 211, 212, 444 P.3d 997 (2019).

K.S.A. 20-1202 sets out two classes of contempt: direct or indirect. Direct contempt is committed during the sitting of the court or before a judge in chambers. All other contempt is indirect, K.S.A. 20-1202, so Mother's contempt was indirect. K.S.A. 2022 Supp. 20-1204a governs the procedure for indirect contempt. In short, this statute provides that a person properly accused of indirect contempt has the right to appear and defend themselves against the allegations. K.S.A. 2022 Supp. 20-1204a(a). And after proper notice and service,

> "[t]he court shall hear the matter at the time specified in the order, and upon proper showing, may extend the time so as to give the accused a reasonable opportunity to purge oneself of the contempt. If the court determines that a person is guilty of contempt such person shall be punished as the court shall direct." K.S.A. 2022 Supp. 20-1204a(b).

Mother argues that the district court violated this statute in three ways: (1) it failed to give her notice of the punishments she would face for failing to purge the contempt; (2) it failed to provide a reasonable means of purging her contempt; and (3) it lost jurisdiction to punish her by the time Father moved to sanction her for violating the

16

parenting plan—a year after the contempt ruling. Relatedly, Mother notes that the district court initially ordered her to comply with a temporary parenting plan that has since been vacated and that the district court's compliance order was very broad—subjecting her "to perpetual sanctions if she violates any of the provisions of the new permanent parenting plan."

Mother is correct that the district court gave Mother no notice of the punishments she could face if she failed to purge herself of the contempt. But the statute does not require the court to do so. Mother had notice of allegations that gave rise to the contempt finding, as the statute requires, enabling her to defend against them. And we agree that the district court's orders to comply with the parenting plan were broad, yet Mother knew what the parenting plan required and could reasonably comply with it.

Mother's arguments fail to show a violation of her due process rights. The statute does not require the specific procedure that Mother suggests, and Mother was given notice of the allegations, time to prepare a defense and raise procedural objections, and an opportunity to defend herself. Mother received the basic process she was due. Cf. *In re Marriage of Navrat*, No. 124,856, 2023 WL 6170924, at *7 (Kan. App. 2023) (unpublished opinion).

Nothing the district court did or failed to do divested it of jurisdiction to sanction Mother. True, the district court waited over a year to address penalties, but by doing so the district court gave Mother time to purge her contempt finding. The district court's contempt order followed procedures that complied with K.S.A. 2022 Supp. 20-1204a and is thus not void for lack of jurisdiction.

17

C. *Penalty, Abuse of Discretion Claim*

We next address the merits of Mother's claim about contempt. This court applies a dual standard of review to challenges to a district court's contempt finding. We apply de novo review to determine whether the alleged conduct is contemptuous, and an abuse of discretion standard in reviewing the sanctions imposed. *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154, 323 P.3d 184 (2014). Discretion is abused when a judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. See, e.g., *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing it. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Mother does not challenge the district court's conclusion that her conduct in 2021 was contemptuous. Instead, she argues that the district court made insufficient findings to support its conclusion that she failed to purge herself of the contempt. She also suggests that the district court did not intend to punish her for her 2021 contempt; instead, it circumvented the appropriate procedure and sanctioned her for more recent conduct without making new contempt findings and giving her another opportunity to purge.

1. *Sufficiency of Evidence and Findings*

In challenging the district court's finding that she did not purge the contempt, Mother primarily asks this court to reweigh the evidence, which we will not do. Appellate courts do not reweigh the testimony or evidence presented to the trial court or reassess witness credibility. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 973, 255 P.3d 34 (2011).

The district court acted within its authority in broadly ordering Mother to follow the parenting plan to purge her contempt. And the record supports the district court's

18

finding that Mother failed to do so. Among the many violations the district court found, Mother admitted that she changed the children's schools and therapy without communicating with Father. The evidence thus supports the district court's finding that Mother violated the parenting plan by continuing to make important decisions for the children unilaterally, thus failing to purge herself of her contempt.

### 2. *Intent of Penalty Imposed*

Mother also contends that the district court abused its discretion by imposing a punitive sanction. Mother thus argues that her sanction was criminal instead of civil.

Contempt can be either criminal or civil. These categories "are distinguished by the intent of the penalty imposed and not necessarily the nature of the underlying legal or equitable action that the court is dealing with." *In re J.T.R.*, 47 Kan. App. 2d at 95. "Civil contempt proceedings are remedial in nature and designed to advance the private right of a litigant won by court order. Any civil contempt penalty is intended to be coercive, and relief can be achieved only by compliance with the order." 47 Kan. App. 2d at 95. A sanction for civil contempt is typically intended to be remedial or to compensate the other party for the contemptuous act. *Jenkins*, 263 Kan. at 358-59.

On the other hand, a criminal contempt is conduct directed against the dignity and authority of a court that tends to obstruct the administration of justice. *Jenkins*, 263 Kan. at 358. So penalties for criminal contempt are typically punitive in nature and are imposed in vindication for a contemptuous act. 263 Kan. at 358. We have guidance in distinguishing between criminal and civil contempt:

> "The distinction between criminal and civil contempt is not always easy to define . . . . This court has provided two questions to help illuminate the nature of a sanction: (1) Is the court attempting to enforce its orders? (2) Is the court attempting to punish an actor

19

for disrespect or disobedience? Generally speaking, '[i]f the former is true, then the answer is usually civil contempt; if it is the latter, then the contempt action is criminal.' *In re J.T.R.*, 47 Kan. App. 2d at 95." *In re Marriage of Navrat*, 2023 WL 6170924, at *8.

The district court did not explain its reasoning for ordering Mother to complete the co-parenting workshop. But the order is remedial in nature and was to ensure Mother's compliance with basic parenting requirements. Although the relief granted did not bring Mother in compliance with the provisions of the parenting plan that she had violated, the co-parenting workshop may have had some effect on Mother's ability to comply with those provisions in the future. But even if the sanction was to punish Mother for her disrespect, making it criminal contempt, Mother fails to show an abuse of discretion because she fails to show that the district court's sanction was based on an error of law or fact, or that a reasonable person could not reach the same result.

III.     *Did the district court appropriately award Father attorney fees following the contempt proceedings?*

The district court awarded Father $15,000 in attorney fees based on Mother's conduct related to the contempt proceedings. Mother argues this decision is not supported by substantial competent evidence. Mother does not challenge the district court's authority to award Father fees, nor does she challenge the reasonableness of the amount of fees assessed. She thus waives or abandons such claims. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (finding issues not briefed waived or abandoned). Mother argues only that substantial competent evidence does not show that the award was fair and equitable under the circumstances, citing *Dunn v. Dunn*, 3 Kan. App. 2d 347, 595 P.2d 349 (1979).

In a family law case, the district court may award attorney fees to either party "as justice and equity require." K.S.A. 23-2715. When, as here, the district court has

authority to grant attorney fees, we review the fee award using an abuse of discretion standard. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 208, 506 P.3d 267 (2022).

Mother claims that by awarding Father $15,000 in attorney fees, the district court ignored her financial circumstances and effectively chilled her ability to file future motions, contrary to *Dunn*. In *Dunn*, this court reversed the trial court's award of $4,500 in attorney fees to a husband, finding an abuse of discretion. *Dunn* held that "one factor that the trial court judge must consider is the need of one party, weighed against the financial ability of the other to pay." 3 Kan. App. 2d 347, Syl. ¶ 3.

But *Dunn* is distinguishable. Unlike in *Dunn*, Mother fails to show that her income is substantially less than Father's, and the district court here made no comments to dissuade Mother from filing future motions. Instead, the district court found that "Mother's conduct generated attorney fees that could have been avoided." The district court also explained that after "[c]onsidering the totality of the circumstances including the financial ability of each person, the Court finds it is fair that [Mother] pay $15,000 of [Father's] attorney fees." The district court thus considered the parties' needs and ability to pay and made an order as justice and equity required.

Father also correctly argues that the judge who awarded fees had overseen this case for more than four years and was well aware of the parties' needs and financial circumstances. Trial courts have broad discretionary authority to determine an award of attorney fees, and appellate courts do not reweigh the testimony or evidence presented to the trial court or reassess witness credibility. And an award will not be set aside on appeal when, as here, it is supported by substantial competent evidence. *In re Marriage of Strieby*, 45 Kan. App. 2d at 973.

21

IV.   *Did the district court appropriately find a material change of circumstances and modify the custody order?*

We next address Mother's argument that the district court abused its discretion by finding that material changes of circumstances justified a modification of child custody. She also argues that the district court erroneously found that shared residential custody was in the children's best interests.

Father contends that because Mother made unilateral decisions to move, change schools, and initiate new therapy, which changes affected the children's mental health, the district court reasonably determined that a change in custody was warranted and was in the children's best interests.

###### A.   *Standard of Review and Basic Legal Principles*

A district court's authority to modify an order of custody, residency, visitation, or parenting time is set forth in K.S.A. 23-3218. K.S.A. 23-3218(a) allows the court to modify any prior order of custody, residence, visitation, or parenting time upon a showing of a "material change in circumstances." Kansas law does not define that phrase, but this court has noted this "requires consideration of a variety of facts and circumstances . . . [and] must be of such a substantial and continuing nature as to make the terms of the initial decree unreasonable. [Citation omitted.]" *In re Marriage of Nelson*, 34 Kan. App. 2d 879, 887, 125 P.3d 1081 (2006).

Whether a material change has occurred must be determined according to the best interests of the child. As our Supreme Court has repeatedly stressed: "'When the custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child.'" *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011); see K.S.A. 23-3201.

22

What constitutes a material change in circumstances is highly fact sensitive. The district court is in the best position to determine this and a child's best interests. See *Cheney v. Poore*, 301 Kan. 120, 128, 339 P.3d 1220 (2014). So an appellate court will not reverse a district court's custody determination absent an abuse of discretion. *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 861-62, 491 P.3d 652 (2021). The paramount question before the district court in a custody dispute is "which parent will do a better job of rearing the children and provide a better home environment." *In re Marriage of Whipp*, 265 Kan. 500, Syl. ¶ 1, 962 P.2d 1058 (1998).

Father requested a change of custody, so he had the burden in the district court to show a material change of circumstances and that modification was in the children's best interests. *M.R.B.*, 313 Kan. at 861. But Mother bears the burden of showing on appeal that the district court abused its discretion. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

B.      *Material Change of Circumstances Finding*

The district court found a material change of circumstances by Mother's unilateral decisions to change the children's residence and schools:

> "A material change in circumstances exists. At the conclusion of the evidentiary hearing, the Court had concerns about both parents' ability to communicate and manage parental duties. It was the Court's hope that once the family was no longer in active litigation, the parents would be able to establish a new normal routine that would be in each child's best interest. The Court granted Mother primary residential custody because Mother was able to offer the children continued residence in their childhood home with continuity in schools. By February 2023, the children no longer felt the need for individual or family therapy.
>
> "Mother's change in residence which resulted in a school change has had a significant negative impact on these children. The Court recognizes that on a map, the

distance was not far. The Court cannot ignore the significant deterioration in mental health of both children following the move.

"Mother's response to learning of the problem with school boundaries evidences that she is not able to communicate and manage parental duties. Mother admits she learned of the problem on July 27, 2023. Mother did not communicate the problem until August 4, 2023. Mother states the delay was for Father's benefit and the children's benefit. After communicating the problem to Father, Mother took the children to see their new schools for the children's benefit. When Father reached out to the school on August 8, 2023, in an attempt to stop the change in schools, Mother told the administrator not to proceed. Mother decided that it was better for the children to change schools. Since changing schools, [Son] has experienced significant anxiety and depression. [Daughter] has been cyberbullied by students at her new school and body shamed. Both children need individual therapy.

"Father has demonstrated he does not make unilateral decisions. In crises, Father can focus on what is best for the children in important situations. Mother's actions show that she is not able to manage parental duties. This information is materially different than what was before the Court at the time of the evidentiary hearing. The Court cannot ignore that the current parenting arrangement is not in the children's best interests."

As these findings show, the district court initially granted Mother primary residential custody because the children could stay in their childhood home and attend their same schools. But Mother unilaterally decided to move and this resulted in significant deterioration in the children's mental health. The district court also found Mother's actions surrounding these events showed her inability to communicate with Father or manage parental duties.

Mother challenges each of these findings, arguing that the district court ignored undisputed evidence and improperly speculated about the children's mental health. We thus review the testimony to determine whether sufficient evidence supports the district court's findings.

24

1.      *Mother's Testimony*

Mother explained that she had signed a lease on June 22, 2023, to rent the property through October, contingent on selling her house. Mother acknowledged that she did not discuss her plans to move with Father and that she had waited to tell Father about the move until she confirmed that she could proceed with the sale of the house. She received this confirmation from her realtor on July 4, so she placed a for-sale sign in the yard and notified Father that day. She and the children then moved to the rental property on July 22. And after closing on the sale of the house on August 16, 2023, she signed a new, year-long lease for the rental property.

As for Mother's knowledge that she needed to give Father a 30-day advance notice of the move, she testified that the parenting plan's 30-day requirement applied only to moves outside the city or state. Because she moved only two miles away, she believed she gave Father sufficient notice under the parenting plan.

Mother also testified that she tried to register the children at their original school after moving. She first registered the children for that school on July 18. Mother did not anticipate a problem with the registration but received an email on July 27, notifying her of the boundary problem. Because she was working, she did not read the email until the next day. Father took the children to a vacation in Colorado on July 29. Mother admitted that she did not immediately notify Father but waited until August 4, when Father returned from his trip. But Mother immediately contacted the school to try to fix the problem, even speaking with the Superintendent, Jeremy Boldra. Mother admitted that she did not include Father in those discussions or later email communications with school officials on the matter, although she knew that the parenting plan required her to copy Father on email communications with the school.

25

Mother denied intentionally changing the children's school and providing false information to the school district about Father's custody when registering the children. Mother maintained that she never told Boldra that she wanted the children to attend the new school. She instead reluctantly accepted that the transfer was the best option with only two days left in the summer. She also admitted that she had stated in a school registration form that Father did not have custody of the children, asserting that the question referred solely to residential custody.

Mother also discussed the children's involvement in therapy. Mother agreed that family therapy sessions ended in early 2023 but Son continued seeing Bryant for individual therapy after that because he had significant anxiety. Daughter had attended therapy with Lindsey Buseman after the divorce proceedings, but Daughter did not have good rapport with her and Buseman did not accept Mother's insurance. Daughter also said that she no longer felt she needed therapy, so Mother allowed her sessions to end. But when Daughter's mental health regressed after their move, Mother found therapist Ann King, scheduled a consultation with her, and then notified Father of the appointment.

Father showed up at the scheduled appointment, and Mother, Father, and King had a discussion without Daughter present. During this conversation, Mother produced a copy of Father's motion to impose a jail sanction to prepare the children's therapists to help the children if she went to jail.

2.  *Father's Testimony*

Father participated in family therapy with the children through Dr. Bryant, as ordered, until January or February 2023 when Bryant, Father, and the children agreed that therapy was no longer needed. Father felt that his parenting time was going well and the children did not seem to be anxious. Father was unaware that Son continued to see Bryant

26

for individual therapy until Mother told him that she needed to schedule an appointment for him in July or August.

Father also testified that he had no notice of Daughter's therapy with either Buseman or King. When he attended the therapy session with King, he learned that Daughter needed therapy because she feared that Mother was going to be "thrown in jail" at his request. This indicated to Father that it was more likely that Mother sought this therapy for herself than for Daughter.

While speaking with the therapist and Mother, Father also learned that Daughter was having some "body issues" and problems with girls in her school. After the appointment, Father's attorney emailed Mother's attorney to object to any additional appointments with King, yet Mother ignored this and took Daughter to one or two more appointments. Father did not oppose Daughter seeing a therapist if she "truly needed" it and was willing to consider other potential therapists.

Father also testified that after moving to modify, he learned that Mother had signed the children out of school to participate in a court hearing. According to Mother, she was directed to do this by her attorney, the children had never met her attorney, and she did not direct them to say anything specific.

As for the change in schools, Father did not agree to the transfer and believed it unnecessarily disrupted the children's lives. Based on his review of subpoenaed school records, Mother had had several email conversations with the school without including Father. Mother had also stated on one of the school registration forms that Father did not have custody of the children. Father also learned from the school records that at some point before the school year began, Boldra had asked Mother if she wanted to complete a transfer request to return the children to their original school, yet Mother unilaterally decided not to do so.

Father agreed that despite the transfer, the children continued to perform well academically, and it was in their best interests to allow them to finish the year at the new school. Still, Father hoped to transfer the children back to their old school the following year because of their long-standing friendships.

Father still lives within the children's original school's residential boundaries. When the children stay with him, they have their own bedrooms, complete their schoolwork, participate in regular church activities, and recently took interest in enrolling in extracurricular activities at school. Father confirmed that he would continue to promote their involvement in these activities if he were granted residential custody. And more broadly, Father testified that he believed he could manage the primary care of the children. He claimed that before the divorce, he fulfilled most of the parenting responsibilities because Mother had a demanding work schedule.

### 3. *Other Testimony*

Mother and Father also presented testimony from Bryant, Boldra, a pediatrician who assessed Daughter (Debroah Kinnane), and the children's orthodontist (Vincent Santucci).

Bryant testified that over the course of family therapy, Father never admitted his part in the problems in his relationships with the children. Son never felt heard by Father but eventually felt less afraid of him. Father focused too much on his belief that Mother was alienating and manipulating the children to think a certain way about him and did not account for the children's independent viewpoints. Bryant did not have any concerns that Mother was exhibiting alienating behavior, and he opined that "the children's emotional home is with mother."

Boldra testified that the school district would likely not agree to allow an out-of-boundaries transfer unless the parties shared nearly equal residential custody. He also explained that he had asked Mother about the possibility of transferring the children a couple of days before school started because he had received a call from Father saying that he had the children around 40 percent of the week. But Boldra had asked Mother how the children split their time and later determined that under its policy, the children would not be allowed to simply request a transfer.

Kinnane testified that she talked to Daughter about her therapy needs after her visits with King. Daughter relayed that she did not like her previous therapist and wanted a female therapist. Kinnane testified that Daughter had a good connection with King and highly recommended that Daughter continued seeing King. Daughter explained that she was dealing with some cyber bullying, body shaming, and new friend issues. Father did not resist therapy in general but objected to King. Father also asked King why Daughter needed therapy and whether some issues were normal adolescent problems.

4.    *Sufficient evidence*

This record supports the district court's concern about Mother's unilateral decision-making. K.S.A. 23-3222(a) requires a legal custodian (Mother) to give written notice to the other custodian (Father) at least 30 days before changing the residence of a child. Mother's stated belief that no notice was required is erroneous. Although the district court did not cite this statute, it emphasized that Mother's decision to move was unilateral and without notice.

Father correctly notes that a change in residence alone "may be considered a material change of circumstances which justifies modification of a prior order of legal custody, residency, child support or parenting time." K.S.A. 23-3222(c). Although the district court did not cite this statute, or rely solely on this factor, it explained why

29

Mother's sudden move to a new school district amounted to a material change of circumstances.

Sufficient evidence shows that the change in residence and schools significantly impacted the children's mental health. Mother contends that other reasons caused their decline in mental health and accuses the district court of speculation as to the cause. Mother is correct in arguing that a court legally errs if it bases its ruling on speculation or conjecture. *Burgardt ex rel. Burgardt v. Willinger*, No. 109,083, 2013 WL 4730691, at *3-4 (Kan. App. 2013) (unpublished opinion). But even Mother's testimony showed that the children's mental health statuses had shifted after their move. Daughter's pediatrician also testified that Daughter reported new concerns about body shaming and cyberbullying. Mother essentially asks this court to reweigh the evidence and find that the change in her children's mental health was due to factors other than her suddenly moving them to a new school district. But the trial judge is in the best position to evaluate witness testimony. And circumstantial evidence is enough to show causation when it affords a basis for a reasonable inference by the court of the occurrence of the fact in issue, even though some other equally reasonable inference might also be drawn from the facts. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 320, 241 P.3d 75 (2010). And an appellate court will not reweigh the evidence, substitute its evaluation of it for that of the district court's, or pass on credibility of the witnesses. See *M.R.B.*, 313 Kan. 855, Syl . ¶ 5 ("An appellate court errs when it reweighs the evidence, substitutes its evaluation for that of the trial court, or passes upon the credibility of the witnesses.").

Mother's argument that the district court based its decision on factual errors discounts our standard of review. The district court commits an error of fact if substantial competent evidence does not support a factual finding on which the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). When reviewing the sufficiency of a trial court's findings, "this court reviews the evidence in a light most favorable to the prevailing party below to determine if the court's factual findings are

supported by substantial competent evidence and whether those findings support the court's legal conclusion." *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 704, 229 P.3d 1187 (2010). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

Reviewing the record within the parameters of these well-established standards, we find the district court appropriately found a material change of circumstances. This triggered the district court's discretionary authority under K.S.A. 23-3218(a) to consider Father's motion to modify custody.

C.    *Residency and Best Interests Determinations*

The district court considered relevant factors under K.S.A. 23-3203 in determining whether primary or shared custody was appropriate under the changed circumstances. The district court found two factors favored Mother because she continuously acted as the "lead parent," and the children preferred to live with her. The district court also found several factors neutral, including the location of the children's school, the children's interactions and relationships with others, and Mother and Father's ability to communicate, cooperate, and manage parental duties.

The district court found three factors supported Father's request to change custody: (1) the children's physical and emotional needs; (2) the children's adjustment to their home, school, and community; and (3) the parents' willingness and ability to respect and appreciate the other parent's bond with the children and to allow continuing relationships. The district court made the following findings for these factors:

- Physical and emotional needs: "Either parent can meet the children's physical and emotional needs. The children consider Mother their emotional home.

31

However, continued conflict does not meet the children's emotional needs. Family therapy between Father and the children resulted in some improvements in that the children were able to talk to their father, [Son] no longer feared his father. Therapy was terminated because maximum therapeutic benefit was reached. The children do not feel as emotionally close to their Father. The underlying parental conflict is the most significant negative impact on the children's mental health."

- Adjustment to home, school, and community: "Prior to Mother's move which resulted in a school change, the children had adjusted. Neither child felt the need for individual therapy. Each child now needs individual therapy. Although the children are performing well academically, they are struggling emotionally."

- Ability to respect parent-child bonds and relationships: "Mother has not improved her ability to respect and appreciate the bond between [Father] and the children. She engages in acts which undermine [Father's] relationship with the children. Specifically, Mother schedules activities during Father's parenting time without Father's agreement. When Father objects, Mother's response is 'the children will be very disappointed.' She places him in an impossible position. Mother removed the children from school so that they could go to her lawyer's office to be available for the Court to interview the children if the Court chose. This action demonstrates a clear message that my lawyer and I are here to protect you from your father. The Court does not have similar concerns with the Father."

Mother challenges these findings by restating the evidence and asking this court to reweigh it and make new factual findings. But appellate courts do not perform these functions, so this portion of Mother's claim necessarily fails. See *M.R.B.*, 313 Kan. 855, Syl . ¶ 5.

Mother also argues that the district court's ruling is inconsistent with its factual findings and its previous ruling on residential custody. She argues that the new findings

are so inconsistent with the previous findings that they must be wrong or unsupported by evidence. But changed facts do not show inconsistency, as the district court explained:

> "Father has demonstrated he does not make unilateral decisions. In crises, Father can focus on what is best for the children in important situations. Mother's actions show that she is not able to manage parental duties. This information is materially different than what was before the Court at the time of the evidentiary hearing. The Court cannot ignore that the current parenting arrangement is not in the children's best interests."

Mother also suggests that the district court's inconsistent findings show that the decision to change custody was not based on the children's best interests. She contends that the district court modified residential custody from primary to shared to punish her for her conduct. We review challenges to specific factual findings in support of these best interests determinations by viewing the evidence in the light most favorable to the party who prevailed below. *M.R.B.*, 313 Kan. at 862. The paramount consideration in determining custody is the welfare and best interests of the child. *Harrison v. Tauheed*, 292 Kan. at 672; see K.S.A. 23-3201.

After finding a material change in circumstances, the district court may modify an existing child custody order "whenever modification would serve the best interests of the child." K.S.A. 23-3221(a); K.S.A. 23-3218(a). When determining the best interests of a child, the court "shall consider all relevant factors" including, but not limited to, those enumerated in K.S.A. 23-3203. K.S.A. 23-3203(a). The district court did so here. It was concerned, from the evidence, that Mother repeatedly made unilateral decisions including moving, school enrollment, changing therapists, and scheduling activities during Father's parenting time. Father did not—he focused on what was best for the children in important situations.

Nothing in the record shows that the district court abused its discretion in its best interests finding. Nor does the record support Mother's suggestion that the district court

changed the children's residential placement in retaliation for Mother's misconduct. *In re Marriage of Grippin*, 39 Kan. App. 2d. 1029, 1035, 186 P.3d 852 (2008). The district court's findings adequately support its conclusion that a modification of the custody order was warranted under the circumstances and was in the children's best interests. We thus find no abuse of discretion.

V.  *Did the district court abuse its discretion when deciding child support?*

Mother appeals two of the district court's child support rulings:  its denial of her request for an overall financial circumstance adjustment, and its order that she pay all orthodontia costs.

Child support in Kansas is governed by the Kansas Child Support Guidelines (Guidelines) (2023 Kan. S. Ct. R. at 101). See K.S.A. 2022 Supp. 23-3002; K.S.A. 2022 Supp. 20-165. Appellate courts generally review a district court's child support award for an abuse of discretion. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 257, 452 P.3d 392 (2019). Interpretation of the Guidelines presents a question of law subject to unlimited review. *In re Marriage of Dean*, 56 Kan. App. 2d 770, 773-74, 437 P.3d 46 (2018); *In re Marriage of Brand*, 273 Kan. 346, 350, 44 P.3d 321 (2002);

A.  *Financial Circumstance Adjustment*

Mother argues that the district court unfairly denied her request for an overall financial condition adjustment to her support obligations. She emphasizes that the district court denied the adjustment despite ordering her to pay all direct expenses, orthodontia costs, and attorney fees. She adds that the district court used her entire gross income, including her overtime, to calculate child support but unfairly excluded an amount that Father claimed was a one-time bonus.

34

The parties agreed to apply the equal parenting time formula for the child support calculations in their proposed worksheets. One of the steps for calculating support under the formula is "[i]f the result . . . of the Equal Parenting Time Worksheet (Appendix 5) is less than zero, the court shall consider the overall financial circumstances of the parties to determine whether an adjustment should be made." Guidelines § III.B.7.b (2023 Kan. S. Ct. R. at 115). Mother referenced this rule and requested the adjustment, arguing that if the district court ordered her to pay nearly all expenses, it should make an adjustment based on principles of fairness. The district court denied the request, however, finding Mother failed to show that the adjustment was in the children's best interests.

Guidelines § IV.E provides that "[a]ll requested adjustments are discretionary with the court. The party requesting the adjustment is responsible for proving the basis for the adjustment. The court shall determine if a requested adjustment should be granted in a particular case based upon the best interests of the child." Guidelines § IV.E (2023 Kan. S. Ct. R. at 123). In line with this provision, the district court considered Mother's request and denied it due to an insufficient showing that the adjustment served the children's best interests.

Mother claims that this decision was unfair for several reasons, including that she has incurred significant legal fees because of these proceedings. In *In re Marriage of Montgomery*, No. 91,391, 2005 WL 331746, at *4 (Kan. App. 2005) (unpublished opinion), this court explained that the Guidelines "factor in the melancholy fact that divorce often causes financial strain as there are now two households instead of one." And given the length of the contested proceedings and the number of hearings in this case, it is likely that Father has incurred significant legal fees as well. Because economic hardship to both parties is often present, "the overall financial conditions adjustment should be applied to reduce the presumptive support only in extraordinary circumstances." 2005 WL 331746, at *4. Mother shows no extraordinary circumstances here.

Mother also suggests that the district court made a factual error by using an incorrect value for Father's gross income. She implies that Father provided inaccurate information in his domestic relations affidavit by excluding from his income a one-time bonus. She admitted an expert report that she thought more accurately assessed Father's average annual income. Father correctly shows that the district court adopted the figure that both parties listed for his income in their proposed worksheets. Mother replies that she did not simply agree to that value, but asked for additional findings and discovery on the matter, as well as an overall financial condition adjustment.

But Mother has not shown that the value the district court used for Father's income affected its decision to deny her an adjustment. And Mother does not show that no reasonable person would do the same. So even if the district court erred in calculating Father's income, Mother fails to show that the district court abused its discretion by denying her an adjustment.

The district court acted within its broad discretionary authority in denying Mother's adjustment request. Cf. *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996) ("[T]he district court has wide discretion in adjusting the financial obligations of the parties in a divorce action."). Mother does not show legal or factual error nor does she convincingly challenge the reasonableness of the decision, so this argument fails.

B.     *Cost of Orthodontia Care*

Mother also alleges the district court abused its discretion by ordering her to pay all of Daughter's orthodontia costs. Mother argues that the district court failed to follow the Guidelines, which require proportional payments from each parent for all necessary medical costs. Father contends that this issue is not addressed by the Guidelines, so the

36

district court had wide discretion that it did not abuse in deciding the matter. See *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 955, 318 P.3d 672 (2014).

Mother is correct. Guidelines § IV.D requires the parties to pay proportional shares of all necessary medical expenses, and it includes orthodontia as a necessary medical expense:

> "In all residential arrangements, including shared residency, the court shall provide that all necessary medical expenses (including, but not limited to health, dental, orthodontic . . . incurred for the benefit of the minor children) not covered by insurance . . . shall be assessed to the parties in accordance with the parties' proportional share shown on . . . the worksheet." Guidelines § IV.D.4.b.(1) (2023 Kan. S. Ct. R. at 120).

At the evidentiary hearing, the children's orthodontist, Dr. Santucci, testified that Daughter's phase two orthodontic care was medically necessary. He explained that "while it's not going to inhibit her health at the moment, it will be detrimental to her health in the long term." The district court did not make any adverse findings about this testimony or find the orthodontic care unnecessary. Thus, this expense is addressed in the Guidelines and must be proportional.

The district court, however, ordered Mother to pay all of Daughter's orthodontia expenses because Mother "purchased Phase 2 orthodontic care . . . without Father's consent." The facts show that Father had attended the consultation for the second phase of Daughter's braces and had objected to the treatment because he could not afford it. Mother admitted that she went forward with the care after Father objected, stating: "I'm able to pay for her orthodontics." She has apparently changed her mind.

The Guidelines do not provide that getting medically necessary care without the other parent's consent is an exception to its proportionality rule, nor do they grant a court discretion on that issue. Although a district court may deviate from the Guidelines when

37

determining the amount of child support, it must justify the deviation with specific written findings explaining how the deviation is in the child's best interests. A failure to make these necessary findings is reversible error. *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998); *In re Marriage of Dean*, 56 Kan. App. 2d at 773-74.

The district court did not find the orthodontic costs unnecessary or make written findings explaining why a deviation from the Guidelines rule requiring Father to pay a proportional share of those costs was in the children's best interests. We thus reverse the order requiring Mother to pay all of Daughter's orthodontia expenses and remand that issue for further proceedings.

VI.    *Did the district court err by not reducing the appeal bond or ordering the release of Mother's escrow funds?*

After appealing, Mother asked the district court to reduce the supersedeas bond, release the funds held in escrow by the title company to secure enough money to afford an appeal bond, or allow her to make a promise to pay. Mother alleged at the hearings that Father had told the title company that he had a judgment lien on her house to circumvent a stay in the proceedings, despite his having already signed a quitclaim deed to the property.

The district court denied Mother's request to reduce the appeal bond, finding Mother failed to show good cause to do so. The district court also found that it lacked jurisdiction to order the release of the escrow funds, so it dismissed the issue. Mother argues that the district court had statutory authority to grant both requests and erred by refusing to grant either, given her financial circumstances.

Father contends that Mother's requested relief cannot be granted on appeal and that this issue is moot. Alternatively, Father argues that the district court decided Mother's

motion within its discretionary authority. As noted above, a case is moot when a court determines that """it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.""" *Roat*, 311 Kan. at 584.

Supersedeas bonds are governed by K.S.A. 2024 Supp. 60-2103(d). The purpose of a supersedeas bond is "to assure satisfaction of the judgment together with costs, interest, and damages for delay." *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 89, 626 P.2d 1211 (1981). See 20 Moore's Federal Practice § 308.31 (Matthew Bender 3d ed.) ("The purpose of a bond is to preserve the status quo while protecting the *prevailing party* against any loss he may sustain."). In *Miller v. Miller*, No. 125,952, 2024 WL 4521959, at *23 (Kan. App. 2024) (unpublished opinion), the panel considered the purpose of an appeal bond in dismissing this issue as moot: "A supersedeas bond is intended to protect the prevailing parties' interests *during* the appeal; any ruling on this issue at this stage would be ineffectual. Because any ruling on this issue in [the appellant's] favor would be unavailing, we find the issue is moot." We find this rationale compelling and follow it here. Because any ruling at this stage on the reduction of the appeal bond or releasing Mother's escrow funds would be ineffectual, this issue is moot.

VII.   *Did Mother establish bias triggering the district court's duty to recuse?*

Lastly, we address Mother's assertion that the district court erred by not recusing itself due to its bias against her. Appellate courts exercise de novo review over whether a district judge's recusal is required. *State v. Moyer*, 306 Kan. 342, 369-70, 410 P.3d 71 (2017).

A litigant may argue that a judge's recusal is required in accordance with (1) the statutory factors set forth in K.S.A. 20-311d(c); (2) the standards of the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2025 Kan. S. Ct. R. at

483); and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Moyer*, 306 Kan. 370.

Mother based her motion solely on K.S.A. 20-311d, which allows a party to move for a change of judge based on the belief "that the judge to whom an action is assigned cannot afford that party a fair trial in the action." K.S.A. 20-311d(a). "Under K.S.A. 20-311d, a party must first file a motion for change of judge; if that motion is denied, then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute." *State v. Sawyer*, 297 Kan. 902, 908, 305 P.3d 608 (2013). Mother did both.

Our task in reviewing a decision not to recuse is clear:

"On review of a judge's decision not to recuse under this statute, an appellate court '"must decide the legal sufficiency of the affidavit and not the truth of the facts alleged."' *Moyer*, 306 Kan. at 371 (quoting *State v. Sawyer*, 297 Kan. 902, 908, 305 P.3d 608 [2013]). The appellate court decides '"whether the affidavit provides facts and reasons . . . which, if true, give fair support for a well-grounded belief that he or she will not obtain a fair trial."' *Moyer*, 306 Kan. at 371 (quoting *Sawyer*, 297 Kan. at 908). The court considers '"whether the charges are grounded in facts that would create reasonable doubt concerning the court's impartiality, not in the mind of the court itself, or even necessarily in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances."' *Moyer*, 306 Kan. at 371 (quoting *Sawyer*, 297 Kan. at 908)." *State v. Turner*, 318 Kan. 162, 179, 542 P.3d 304 (2024).

*Mother's Claims of Bias*

After the district court denied Mother's motion for recusal, her counsel submitted an affidavit stating the facts supporting the allegations of bias for the chief judge's review. This affidavit stated that when counsel first entered his appearance, he was warned by Mother's previous attorney that the district court judge did not like Mother and

that counsel was concerned that the district court might sentence Mother to jail. Having had previous interactions with the judge, counsel initially brushed off the warning. But after appearing at several hearings when the judge showed "noticeable hostility" toward Mother, counsel also feared possible jail time for Mother. Counsel then listed several specific instances in which the judge had allegedly shown disdain for or bias against Mother. But by failing to brief most of those matters, Mother waives or abandons all but one event. *In re Adoption of Baby Girl G.*, 311 Kan. at 803 .

Mother's brief references only one event included in counsel's affidavit—a scheduling hearing in December 2024 when her counsel and the judge spoke about the judge's perceived negative attitude toward Mother:

> "Counsel for [M]other stated that shortly after the trial began his first-year associate inquired why the atmosphere was so intimating against Mother. There was also another associate watching portions of the hearing that noticed negative body language and facial expression towards mother. The consensus of [M]other's counsel present was that something was off. The Court responded:
>> "'I think that what—like I mentioned before, you all are both new to this case, but I have been on this case since 2021. And so there have been multiple hearings. And so I don't feel that I'm unfairly biased in favor of one or against the other. There's just been a lot of history on the record in this case. And I can explain that part of my frustration with the mother has been the evidence I've heard that she learned about this change of school at a time when it could have been corrected and then did nothing to notify the father.'"

Mother claims that the judge's temperament toward her continued to deteriorate after that hearing. Mother asserts that the judge had become "admittedly frustrated with Mother in an already emotionally charged matter." Mother adds that the chief judge did not reasonably consider her specific allegations, noting its comment: "'The Petitioner

requested a continuance, the Respondent objected, and [the judge] granted the Petitioner's request. It is baffling to this Judge how any of this adds up to personal bias.'"

We find that the challenged portion of Mother's affidavit was not legally sufficient to warrant the district judge's recusal under K.S.A. 20-311d. The affidavit alleges that one attorney perceived an intimidating atmosphere, and another viewed negative body language and facial expression by the judge. But these subjective assertions, even if true, do not provide facts and reasons which give fair support for a well-grounded belief that Mother would not obtain a fair trial. Without more details about these incidents, the assertions in the affidavit are legally insufficient to force a judge's recusal under the statute. See *Sawyer*, 297 Kan. at 908 (allegations in affidavit that judge prevented pro se pleadings and ordered defendant transported gag in place were not, without more detail, legally sufficient to force recusal because this is not always unjustified).

We realize that the judge had made a negative finding about Mother's credibility on a crucial matter, had voiced her frustration with Mother's behavior, had found Mother in contempt, and had sanctioned her for violating the parenting plan. But given all the circumstances in the judge's dealings with the parents during years of litigating the contentious divorce, Mother has not shown that the charges are grounded in facts that would create reasonable doubt concerning the court's impartiality, in the mind of a reasonable person with knowledge of all the circumstances, as the statute requires. See *Turner*, 318 Kan. at 179-180.

Mother also argues that the judge's later orders showed inequity because the judge was aware of her strained financial circumstances yet continuously imposed additional financial burdens. Mother also cites the decision to modify the custody order as supporting her allegations of bias and prejudice. But K.S.A. 20-311d(d) excludes "the recital of previous rulings or decisions by the judge on legal issues" as legally sufficient

42

grounds for establishing a belief of bias or prejudice. Mother's disagreement with rulings thus cannot serve as a basis for recusal.

Our review of the other issues Mother has raised in this appeal confirms that the judge afforded Mother a fair trial and procedure in this lengthy and hotly contested action. Because Mother has not shown disqualifying bias or prejudice by the district judge, she fails to provide a basis for reversing the district court's denial of her motion to recuse.

We thus affirm the district court on all issues except its order that Mother pay all orthodontic costs. We remand that issue for further proceedings including, if relevant, findings explaining how any deviation from the Guidelines is in the children's best interests.

Affirmed in part, reversed in part, and remanded with directions.